239 P.3d 557 (2010)
In the Matter of the Marriage of Robin M. FREEMAN, Petitioner,
v.
Rob R. FREEMAN, Respondent.
No. 82283-2.
Supreme Court of Washington, En Banc.
Argued January 19, 2010.
Decided September 2, 2010.
*558 Patricia S. Novotny, Attorney at Law, Seattle, WA, for Petitioner.
Margaret H. Brost, Attorney at Law, Olympia, WA, for Respondent.
David J. Ward, Legal Voice, Seattle, WA, amicus counsel for Legal Voice, Sexual Violence Law Center & Washington State Coalition Against Domestic Violence.
SANDERS, J.
¶ 1 In 1998 Robin Freeman (now known as Robin Abdullah) obtained a permanent protection order against her then-husband, Rob Freeman. Soon thereafter Rob[1] left Washington as part of a military reassignment; he claims he has never returned. In 2006 Rob moved to modify or terminate the permanent protection order. In this appeal, we must determine whether the superior court commissioner improperly declined to terminate the permanent protection order at that time. We affirm the Court of Appeals. The commissioner abused her discretion when she denied Rob's motion to terminate the order.

FACTS
¶ 2 During dissolution proceedings, Robin sought an ex parte order of protection against Rob. A Thurston County Superior Court commissioner signed a temporary order *559 of protection on January 23, 1998, which remained in effect until a February 4, 1998 hearing. After hearing testimony from both parties on February 4, the commissioner made the order permanent.
¶ 3 Two incidents underlie the permanent protection order. First, Rob pushed Robin's 16-year-old daughter, Yasmeen, into her bedroom.[2] While Rob characterized the incident as "escort[ing]" Yasmeen to her room after a "semi-heated" confrontation, Clerk's Papers (CP) at 13, he also admitted he physically forced Yasmeen down a hallway and through the threshold to her bedroom. Id. at 20. Rob testified:
I tried to grab [Yasmeen] by the arm and she crouched down right away and I placed my hand openly and tried to go for the shoulder but she kept on moving so it was up on the side of the neck and I pushed her all the way down which was like six[,] seven feet. [I] [o]pened her door and put her inside and then closed the door.
Id. In contrast Robin claims Yasmeen was "rendered unconscious when [Rob] dragged her down the hall and applied pressure to points on her neck and head." Pet. for Review at 2-3.
¶ 4 In the second incident Rob claims he opened his gun safe to show Robin that he had not hidden her jewelry inside, after Robin accused Rob of stealing it. Robin claims Rob inventoried his guns while telling her he was not going to harm heracts Robin perceived as threats. When Robin told Rob she was scared of the guns, he replied, "[F]ine, fine you're scared." CP at 26.
¶ 5 The commissioner determined these two incidents placed Robin in a reasonable state of fearparticularly in light of Rob's extensive military trainingand warranted the permanent protection order. The order prevented Rob from contacting Robin and her children, then aged 10, 12, 16, and 18.
¶ 6 More than eight years later, on May 31, 2006, Rob moved to modify or terminate the permanent protection order. In 2001, doctors had amputated Rob's left hand below the forearm. In response Rob sought retraining to pursue his career in the military, defense, or security industries, but most jobs required security clearance. The permanent protection order barred Rob from obtaining security clearance.
¶ 7 To support his motion to modify or terminate the permanent protection order, Rob claimed he "has not returned to Washington since he left in 1998." Resp. Br. of Appellant at 3. Moreover Rob claimed he has complied with the permanent protection order and made no contact with Robin or her children since the divorce, lives in another state (Missouri), has no criminal record, and "simply do[es] not pose any kind of danger to anyone at this time." CP at 5. He further asserted, "I continue to have neither the inclination nor the ability to do anything to Robin." CP at 36.
¶ 8 Robin responded that she remains in constant fear of Rob. The basis for her present fear appears to be, in her own words, "ongoing disturbances at her home of unknown cause." Pet. for Review at 4. Chief among the unexplained disturbances are rattling windows, doors, and walls; repositioning of the driver's seat in her car; receiving Rob's mail at her house; reappearance of a flower vase on her dresser; missing tools; and a hole in her bedroom wall. Robin admits she has never seen Rob do any of these things.
¶ 9 On August 9, 2006 a court commissioner heard the motion to modify or terminate. Yasmeen, who was 25 years old at the time of the hearing, testified she saw Rob across the street from her high school six or seven years earlier. Rob's counsel denied the allegation, asserting Rob had not been in Washington State since the permanent protection order and had no intention to return.
¶ 10 The court commissioner found Robin's continuing fear to be "reasonable ... based on the previous incidents involving her daughter and incidents involving weapons." CP at 49. The commissioner denied Rob's motion to modify or terminate the permanent protection order. On September 1, 2006, Robin moved for $1,271 in attorney fees, which the court denied. The superior court *560 denied a motion to revise the court commissioner's ruling.[3]
¶ 11 Rob appealed to the Court of Appeals, which reversed the commissioner's denial of Rob's motion to terminate. A unanimous Court of Appeals wrote:
It is reasonable that a past act could inflict current fear, but that fear must still relate to a threat of imminent harm, injury, or assault. Here, due to time and distance, there is no evidence to support a current fear that physically harmful acts or threats of imminent harm would occur upon lifting the order.
In re Marriage of Freeman, 146 Wash.App. 250, 257, 192 P.3d 369 (2008). The Court of Appeals found the commissioner abused her discretion by denying Rob's motion to modify or terminate. "The commissioner did not consider all of the relevant facts and misapprehended others.... The denial of the motion to terminate or modify the order is based on untenable reasons and grounds." RCW 26.50.060(3). Robin sought discretionary review, which we granted.

ANALYSIS
¶ 12 We must decide whether the commissioner abused her discretion when refusing to terminate the permanent protection order. Whether to grant, modify, or terminate a protection order is a matter of judicial discretion. The statute authorizing permanent protection orders provides: "[I]f ... the court finds that the respondent is likely to resume acts of violence[,] ... the court may either grant relief for a fixed period or enter a permanent order of protection." RCW 26.50.060(2) (emphasis added). If a victim petitions to renew an order of protection, the court "may renew the protection order for another fixed time period or may enter a permanent order as provided in this section." Id. at .060(3). (emphasis added). Similarly the provision authorizing modification or termination of permanent protection orders provides that "the court may modify the terms of an existing order for protection." RCW 26.50.130(1) (emphasis added).
¶ 13 The term "may" in a statute generally confers discretion. Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 28, 978 P.2d 481 (1999) (citing Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 381, 858 P.2d 245 (1993)). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).

I. Permanent Protection Order

¶ 14 Washington's Domestic Violence Prevention Act (DVPA) defines domestic violence as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members...." RCW 26.50.010(1). The legislature has articulated a clear public policy to protect domestic violence victims. See ch. 26.50 RCW; see also ch. 10.99 RCW (domestic violence official response act); RCW 10.99.010 ("The purpose of this chapter is to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide.").
¶ 15 The legislature has authorized courts to make protection orders permanent in some circumstances:
[I]f ... the court finds that the respondent is likely to resume acts of domestic violence against the petitioner or the petitioner's family or household members or minor children when the order expires, the court may either grant relief for a fixed period or enter a permanent order of protection.
RCW 26.50.060(2). Such permanent protection orders, however, can be modified or terminated. "Upon application with notice to all parties and after a hearing, the court may *561 modify the terms of an existing order for protection." RCW 26.50.130(1).
¶ 16 The modification statute fails to spell out grounds, factors, or standards authorizing modification of a permanent protection order. See id. It also fails to mention which party bears the burden of modifying or maintaining the permanent protection order. Id. In this vacuum, we read the DVPA as a whole.
¶ 17 Most instructively, the statute authorizing renewal of a temporary order of protection provides:
The court shall grant the petition for renewal unless the respondent proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence against the petitioner or the petitioner's children or family or household members when the order expires.
RCW 26.50.060(3) (emphasis added). Both (1) blocking a renewal motion and (2) modifying a permanent order are sufficiently similar to warrant the same standard, particularly when the legislature has shown a preference for it. It certainly does not make sense to apply a standard to modify a permanent order that is lower than the standard required to renew a temporary order. As much as it is possible to prove a negative, Rob (the moving party) bears the burden of proving by a preponderance of the evidence (i.e., more likely than not) that he will not resume acts of domestic violence against Robin or her children.
¶ 18 In this matter of first impression it is not necessary to reinvent the wheel. In Carfagno v. Carfagno, 288 N.J.Super. 424, 672 A.2d 751 (1995), a New Jersey court embraced 11 factors guiding termination of a permanent protection order: (1) whether the victim has consented to lift the order, (2) the victim's fear of the restrained party,[4] (3) present nature of the relationship between parties, (4) whether the restrained party has any contempt convictions for violating the order, (5) restrained party's alcohol and drug involvement, if any, (6) other violent acts on the part of the restrained party, (7) whether the restrained party has engaged in domestic violence counseling, (8) age and health of the restrained party, (9) whether the victim is acting in good faith to oppose the motion, (10) whether other jurisdictions have entered any protection orders against the restrained party, and (11) other factors deemed relevant by the court. Id. at 435, 672 A.2d 751. We believe New Jersey's guidelines provide a sensible framework for analyzing whether the preponderance of the evidence suggests a restrained party will commit a future act of domestic violence.
¶ 19 Robin asserts the permanent restraining order in this case should remain just thatpermanent. Robin alleges the Court of Appeals improperly shifted the burden of proof from Rob to her, "requiring her to overcome a presumption that her present fear is unreasonable if not assuaged by the passage of time and distance." Pet. for Review at 7. Robin claims that "[u]nder the court's ruling, a perpetrator may have a permanent order terminated if he proves he has complied with the order over a period of time, no longer lives in the vicinity, and claims a need for the order to be terminated." Id. at 6.
¶ 20 Robin's characterization oversimplifies the analysis. The relevant analysis, instead, includes whether Rob proved an unlikelihood of committing future acts of domestic violence and whether the facts support a current reasonable fear of imminent harm. While Rob bears the burden of proving by a preponderance of the evidence that he will not commit future acts of domestic violence, the facts must also support a finding that Robin's current fear of imminent harm is reasonable. We can only determine if the commissioner abused her discretion when denying a request to modify a permanent protection order if the facts of the matter are placed before us on review. This should not be confused with compelling Robin to prove her case again by overcoming a presumption.
*562 ¶ 21 Again, RCW 26.50.010(1) defines domestic violence as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." The facts supporting a protection order must reasonably relate to physical harm, bodily injury, assault, or the fear of imminent harm. It is not enough that the facts may have justified the order in the past. Reasonable likelihood of imminent harm must be in the present. This notion dovetails with the legislature's authorization for courts to modify existing permanent protection orders. See RCW 26.50.130. While permanent protection orders are contemplated to be permanent when the facts require it, the legislature's grant of modification clearly authorizes the court to rescind some if the petitioner meets its burden. Id.
¶ 22 Robin cites two Court of Appeals cases, Barber v. Barber, 136 Wash.App. 512, 150 P.3d 124 (2007), and Spence v. Kaminski, 103 Wash.App. 325, 12 P.3d 1030 (2000), for the proposition that permanent protection orders can be permanent based on "past abuse and present fear" alone. Pet. for Review at 7. Robin's reliance on these cases is misplaced. These cases stand for the proposition that to renew or make permanent a protection order, the victim does not need to prove a new act of domestic violence if the present likelihood of a recurrence is reasonable. See Spence, 103 Wash.App. at 333, 12 P.3d 1030; Barber, 136 Wash.App. at 513, 516, 150 P.3d 124. Unlike Robin, the victims in both Spence and Barber showed a reasonable present likelihood of violence, in addition to past abuse. Id. Notably, the victims had ongoing relationships with their abusers. In Spence the couple's relationship continued after a divorce as they bickered over child custody. "[T]he continuing relationship of the parties, who still struggled over custody issues, presented ongoing opportunities for conflict." Spence, 103 Wash.App. at 333, 12 P.3d 1030. In Barber the couple also interacted after their divorce. 136 Wash.App. at 513, 150 P.3d 124. Robin, on the other hand, shows past abuse but the facts show recurrence of domestic violence is unlikely.
¶ 23 Here, to permit the permanent protection order to continue forever would hold Rob hostage to his decade-old imprudence. There is scant evidence that Rob would subject his former wife and her children to future domestic violence. Through his testimony, deeds, relocation, career ambitions, and now 10-year compliance with the permanent protection order, Rob has met his burden to prove that he will more likely than not refrain from future acts of domestic violence against Robin or her children.
¶ 24 The New Jersey factors weigh in favor of Rob. Namely, (factor 2) Robin's fear of Rob is objectively unreasonable;[5] (factor 3) they have had no contact for ten years; (factor 4) Rob has not violated the permanent protection order, so no contempt orders exist; (factor 5) Rob has no known problems with alcohol or drugs; (factor 6) Rob has no criminal record and has committed no other violent acts; (factor 8) Rob's health has suffered as a result of his war injury and amputation; (factor 10) the record does not reflect any other protection orders against Rob; and (factor 11) other relevant considerations include Rob's career ambitions.
¶ 25 In contrast, the factors favoring Robin include the fact that (factor 1) Robin has not consented to lift the order and (factor 7) Rob has presumably not engaged in domestic abuse counseling. Robin's (factor 9) good faith is unknown. As Rob noted, he has "clearly moved on with his life and ha[s] not done anything to support Robin's continued fear of harm from him." Resp. Br. of Appellant at 9.
¶ 26 As much as it is possible to prove a negative, Rob has done so here.[6] The likelihood that Rob will commit future acts of domestic violence on these facts is low. *563 Hand in hand with that determination, the facts do not suggest Robin's fear of Rob is based on a reasonable threat of imminent harm. Accordingly, the commissioner abused her discretion; she based her denial of Rob's motion to modify or terminate the permanent protection order on untenable grounds. State ex rel. Carroll, 79 Wash.2d at 26, 482 P.2d 775. We affirm the Court of Appeals termination of the order.[7]

II. Attorney Fees

¶ 27 Courts decline to award attorney fees under a statute unless there is a clear expression of intent from the legislature authorizing such an award. Cosmopolitan Eng'g Group, Inc. v. Ondeo Degremont, Inc., 159 Wash.2d 292, 303, 149 P.3d 666 (2006). We review a grant or denial of attorney fees for abuse of discretion. Morgan v. City of Federal Way, 166 Wash.2d 747, 758, 213 P.3d 596 (2009).
¶ 28 Robin concedes the DVPA "authorizes an award of reasonable attorney's fees incurred by a protected party in seeking an order or renewal of an order." Pet. for Review at 15-16 (emphasis added). But this case concerns neither the seeking nor the renewal of an order. It concerns the modification of one. By omitting a grant of attorney fees from the modification statute, the legislature intended that each party shoulder reasonable attorney fees. See RCW 26.50.130. There is no clear expression of intent from the legislature to authorize attorney fees for modification of permanent protection orders.
¶ 29 In any event the grant of attorney fees under the DVPA, where authorized, is discretionary. The statute authorizing issuance of protection orders provides: "[T]he court may provide relief as follows: Require the respondent to pay the administrative court costs and service fees ... and to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." RCW 26.50.060(1)(g) (emphasis added). The statute authorizing renewal of a protection order contains the same discretion. See RCW 26.50.060(3) ("The court may award court costs, service fees, and reasonable attorneys' fees as provided in subsection (1)(g) of this section." (emphasis added)). The commissioner did not err when she denied Robin's request for attorney fees. See Morgan, 166 Wash.2d at 758, 213 P.3d 596. We deny Robin's request for attorney fees here as well.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, and JAMES M. JOHNSON, Justices.
FAIRHURST, J. (dissenting).
¶ 30 In this case, we are asked what standard and factors are to be applied when a trial court determines whether a permanent order of protection should be terminated. The majority adopts 11 factors from a New Jersey decision, which was based on that state's substantially different protection order statute. I believe we should articulate a standard and factors based on our own state's statute and recognized public policy of protecting domestic violence victims. I dissent because I ultimately conclude that the commissioner did not abuse her discretion when she declined to terminate the order.[1] The Court of Appeals substituted its judgment for that of the trial court rather than applying the abuse of discretion standard.
¶ 31 Under our state's Domestic Violence Prevention Act (DVPA), chapter 26.50 RCW, a person may seek an order of protection by filing a petition alleging he or she is the victim of domestic violence. RCW 26.50.020(1). After notice and a hearing, a court may enter an order of protection that can provide various forms of relief for the petitioner, including restricting where the respondent may go and whom he or she may contact. RCW 26.50.060(1)(a)-(l). Although the DVPA as originally enacted provided *564 that protection orders may last no more than one year, Laws of 1984, chapter 263, section 7, the DVPA has since been amended to allow for orders lasting longer than one year and for permanent orders of protection if "the court finds that the respondent is likely to resume acts of domestic violence," RCW 26.50.060(2), to relieve victims of the trauma and costs associated with renewing orders of protection, S.B. Rep. on Substitute H.B. 2745, 52d Leg., Reg. Sess. (Wash.1992). A petitioner may seek renewal of a fixed time order, which the court must grant "unless the respondent proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence." RCW 26.50.060(3).
¶ 32 Orders of protection may be modified following notice to all parties and a hearing. RCW 26.50.130(1). The modification statute does not distinguish between fixed time and permanent orders[2] and does not indicate the applicable level or burden of proof, nor what factors the court should consider in making its modification decision. See id. However, it is apparent to the parties, to the majority, and to me that the inquiry with respect to terminating a permanent order of protection must focus on whether the restrained party has shown by a preponderance of the evidence that he or she will not resume acts of domestic violence if the order is lifted. Majority at 561; Br. of Resp't/Cross-Appellant (Robin Abdullah) at 13-14; Resp. Br. of Appellant (Rob Freeman) at 7.
¶ 33 To guide its analysis, the majority adopts wholly the factors enunciated in Carfagno v. Carfagno, 288 N.J.Super. 424, 435, 672 A.2d 751 (1995),[3] reasoning that they "provide a sensible framework for analyzing whether the preponderance of the evidence suggests a restrained party will commit a future act of domestic violence." Majority at 561. The New Jersey court created the Carfagno factors to answer a different inquiry namely, whether there is good cause to terminate a permanent order of protection to meet New Jersey's required showing. N.J. Stat. Ann. § 2C:25-29(d) (2009) ("Upon good cause shown, any final order may be dissolved or modified ...." (emphasis added)); Carfagno, 288 N.J.Super. at 434-35, 672 A.2d 751 ("[C]ourts should consider a number of factors when determining whether good cause has been shown that the final restraining order should be dissolved upon request of the defendant." (Emphasis added.)). Good cause is not the Washington standard, and presumably results in more frequent terminations of permanent orders of protection than a standard narrowly focused on determining whether the restrained party will resume acts of domestic violence.[4]
¶ 34 Robin[5] and amici curiae[6] argue that the Carfagno factors should not be adopted, and that CR 60 provides the proper framework for a court to use when determining whether to terminate a permanent order of protection. Amici note that other states often look to their versions of CR 60 in evaluating motions to modify domestic violence protection *565 orders.[7] CR 60(b)(6) provides that a court may vacate a final order if "it is no longer equitable that the judgment should have prospective application." This provision is helpful in that it directs the court to look at how factual circumstances have changed since the permanent order of protection was initially entered, and to consider the continuing need for and efficacy of the permanent order. See Metro. Park Dist. of Tacoma v. Griffith, 106 Wash.2d 425, 438, 723 P.2d 1093 (1986). However, it provides no guidance as to the burden of proof, which factors are or are not appropriate for consideration, and appears, on its face, to allow a court to weigh factors like inconvenience to the restrained party against the likelihood of future domestic violence. Further, the effect of granting a motion under CR 60 is nullification of the order in question; the parties are left as though the order had never existed. In re Marriage of Leslie, 112 Wash.2d 612, 618, 772 P.2d 1013 (1989). Where a permanent order of protection is terminated because circumstances have changed since the order was originally entered, it is inappropriate to terminate the order in such a way that, legally, it is as though the order never existed.
¶ 35 Because neither gives adequate and appropriate guidance to the courts, I find neither the Carfagno factors nor CR 60 completely satisfactory. Rather, we should look to the provisions of the DVPA first, and use these other authorities to supplement, rather than dictate, our analysis. In the context of terminating a permanent order of protection, the inquiry into whether the restrained party will resume acts of domestic violence upon termination of the order is not made in a vacuum. Before a permanent order of protection can be terminated, it must have been entered; before a permanent order of protection can be entered, the court must have found the respondent likely to commit future acts of domestic violence if the order were to terminate. See RCW 26.50.060(2). The termination process should not become an avenue by which a restrained party may repeatedly revisit issues that have been resolved in prior proceedingsthat would defeat the very purpose of permanent orders. Instead, the findings entered pursuant to the original permanent order of protection should be taken as verities, and the party seeking termination of a permanent order of protection must demonstrate by a preponderance of the evidence that conditions have changed such that the restrained party is no longer likely to commit acts of domestic violence against the petitioner or his or her family or household members upon termination of the permanent order of protection. See RCW 26.50.060(2), .130(1); CR 60(b)(6).
¶ 36 Whether conditions have changed such that the restrained party is no longer likely to commit future acts of domestic violence is a highly fact-specific inquiry, such that an exhaustive list of the relevant factors is probably not possible. Time alone cannot establish such a change in conditions, because if that were possible, then no permanent order of protection would be truly permanent. A more sensible approach is to look to the "totality of the circumstances" and list examples of factors that can be considered in appropriate circumstances or cannot be considered at all. See Vasquez v. Hawthorne, 145 Wash.2d 103, 107-08, 33 P.3d 735 (2001). The underlying question in determining which factors to consider must always be: Does this factor address a change in circumstances that indicates it is no longer likely the respondent will commit future acts of domestic violence against the petitioner?
¶ 37 While I do not support adopting the Carfagno factors wholly, some of the factors may be relevant to determining whether the restrained party is no longer likely to commit future acts of domestic violence. For example, factors that can be considered in appropriate circumstances are: the current nature of the relationship between the parties, whether the respondent has been convicted of contempt for violating the order, whether the respondent has a continuing involvement with drug or alcohol abuse,[8] whether the *566 respondent has been involved in other violent acts with other persons, whether the respondent has engaged in counseling, the age and health of respondent,[9] and whether another jurisdiction has entered a restraining order protecting the victim from the respondent. In appropriate cases, these factors all may directly relate to the question of the respondent's likely future conduct.
¶ 38 I believe the other Carfagno factors should not be considered. The victim's consent to remove the order is not evidence of the respondent's future conductthis fact is already acknowledged by Washington law, which does not recognize the petitioner's consent as a defense where a restrained party is charged with violating a protective order. RCW 26.50.035(1)(c) ("`You can be arrested even if the person or persons who obtained the order invite or allow you to violate the order's prohibitions.'" (quoting order of protection)); State v. Dejarlais, 136 Wash.2d 939, 942, 969 P.2d 90 (1998). The victim's good faith in opposing the respondent's request also has nothing to do with the respondent's tendency to commit domestic violence in the future. Finally, the victim's current fear, which Carfagno explicitly states must be evaluated from an objective, rather than subjective, standpoint should not be considered. The fear factor shifts the focus onto the victim and creates the possibility, which was realized in this case, that the court will erroneously, if unconsciously, require the victim to prove his or her current fear is real and objectively reasonable.
¶ 39 The majority insists its holding does not require Robin to prove her current fear is reasonable. It articulates its analysis as considering "whether Rob proved an unlikelihood of committing future acts of domestic violence and whether the facts support a current reasonable fear of imminent harm." Majority at 561. However, it is clear that the majority's analysis inevitably saddles Robin with the burden of proving she is currently, reasonably fearful of future domestic violence upon the permanent order's termination. This is problematic for several reasons. First, the majority's emphasis on current, objectively reasonable fear elevates that Carfagno factor into an element without any justification. Second, contrary to the majority's assertion, it is "enough that the facts may have justified the order in the past." Majority at 562. As noted above, the fact that the permanent order of protection was entered in the first place reflects a finding by the trial court that the restrained party is likely to commit future acts of domestic violence upon the order's termination. It is therefore necessary that the order continues to operate unless and until Rob makes the necessary showing of changed circumstances, regardless of how Robin would feel if she were "reasonable." Third, the provision for renewal of orders of protection for a fixed time, which presumably should have a similar standard, does not require objectively reasonable fear; it merely requires petitioner to "state the reasons" for renewal, then shifts the entire burden of proof onto the respondent to show he or she will not commit future acts of domestic violence if the order is lifted. RCW 26.50.060(3). The risk of improperly requiring the victim to prove the reasonableness of his or her fear, and thus carry the burden of proof for the overall determination, is significant enough that this factor should not be considered.
¶ 40 A court's decision on whether to modify an order of protection is discretionary, as the majority states. Majority at 559-60. Therefore, a court's modification decision is subject to review under our abuse of discretion standard and will not be disturbed unless it "`is manifestly unreasonable or based upon untenable grounds or reasons.'" Salas v. Hi-Tech Erectors, 168 Wash.2d 664, 669, 230 P.3d 583 (2010) (quoting State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997)). *567 "`A trial court's decision is manifestly unreasonable if it adopts a view that no reasonable person would take.'" Id. at 669, 230 P.3d 583 (internal quotation marks omitted) (quoting In re Pers. Restraint of Duncan, 167 Wash.2d 398, 402-03, 219 P.3d 666 (2009)). "`A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" Id. (quoting Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006)).
¶ 41 The Court of Appeals in this case concluded that the commissioner abused her discretion when the commissioner found that "`[i]t is not appropriate for the mere passage of time without any other showing to lift a person's reasonable fears that they may be a victim of domestic violence by someone who has hurt them in the past.'" In re Marriage of Freeman, 146 Wash.App. 250, 258, 192 P.3d 369 (2008) (alteration in original) (quoting Clerk's Papers (CP) at 55 (Finding of Fact 2.21)). The Court of Appeals reads this finding as indicating that the commissioner believed Rob had asserted only the mere passage of time as a reason for modifying the permanent order of protection. See id. That reading is inaccurate; the finding does not state that Rob asserted time as the only reason for modification.
¶ 42 The Court of Appeals then goes on to state that Rob also established "a compelling need for lifting the order and a lack of opportunity for contact." Id. However, Rob's "compelling need" that the order be lifted has absolutely no relevance to whether there is a likelihood of future domestic violence, and the "lack of opportunity for contact" is apparently something the Court of Appeals somehow determined on its own, based on the fact that Rob lives in another state. Such a conclusion ignores the ease of travel within the United States and the fact that domestic violence can occur through phone calls and agents. See RCW 9A.46.110(4); RCW 26.50.010(1)(a). Whether Rob has actually made any such phone calls or enlisted third parties to commit acts of domestic violence has no relevance to the fact that such avenues of abuse are available to him despite his distance from Robin.
¶ 43 Finally, the Court of Appeals finds that "there is no evidence that Rob had hurt his wife" or her children at "any time." Freeman, 146 Wash.App. at 258, 192 P.3d 369. This announcement ignores the unchallenged findings at the 1998 hearing that Rob engaged in domestic violence and that an order of less than one year would be insufficient to prevent further acts of domestic violence. CP at 85, 87. The Court of Appeals on review should not substitute its own conclusion for the unchallenged findings of the commissioner who entered the order.
¶ 44 Like the Court of Appeals, the majority opinion appears to pay short shrift to the 1998 finding of domestic violence when it refers to Rob's actions as "his decade-old imprudence." Majority at 562. In its determination that the Carfagno factors weigh in favor of terminating the permanent order of protection, the majority considers such irrelevant factors as Rob's nonuse of drugs[10] and his loss of a hand.[11] Such factors do not establish that the situation has changed such that Rob is no longer likely to resume domestic violence in the absence of a permanent order of protection.
¶ 45 There are some relevant Carfagno factors that favor termination of the permanent order of protection in this case: Rob has not contacted Robin in at least seven years, Rob lives in another state, he has no convictions for contempt for violating the order, the record contains no evidence that Rob has engaged in other violent acts, and there is no record that Rob is subject to any other restraining orders. While these factors weigh in favor of finding Rob less likely to resume domestic violence, they do not necessitate the conclusion that circumstances have changed such that Rob is no longer likely to commit future acts of domestic violence. On the other side, the record does not show that Rob has sought or received any counseling *568 related to domestic violence. Combined with Rob's affidavit, which reflects a denial of responsibility for the earlier incidents of domestic violence, blames Robin for "any harm she has experienced," characterizes her as vengeful and "manipulative," and characterizes this proceeding as a "whine contest," I cannot say that no reasonable court could find that Rob has failed to meet his burden to terminate the permanent order of protection. CP at 34, 36. Nor can I say that such a determination is based on untenable grounds or reasons.
¶ 46 I would hold that the commissioner in this case did not abuse her discretion by denying Rob's motion to modify his permanent order of protection. Accordingly, I would reverse the Court of Appeals and would reinstate the commissioner's order.
WE CONCUR: BARBARA A. MADSEN, Chief Justice and DEBRA L. STEPHENS, Justice.
NOTES
[1] We use the parties' first names for the sake of clarity.
[2] Robin has four children from a previous relationship. All are now adults.
[3] "Because the superior court did not revise the commissioner's decision, the commissioner's decision stands as the decision of the superior court that is before us for review." In Interest of Mowery, 141 Wash.App. 263, 274-75, 169 P.3d 835 (2007).
[4] The Carfagno court explicitly declined to evaluate the victim's subjective fear, opting instead to use an objective, reasonable person standard. "Objective fear is that fear which a reasonable victim similarly situated would have under the circumstances. The court holds that courts should focus on objective fear." Carfagno, 288 N.J.Super. at 437, 672 A.2d 751.
[5] Robin's perception of unexplained household events is not enough to substantiate a reasonable continuing fear of Rob.
[6] It is important to note that in many (perhaps most) cases the restrained party faces an uphill climb to prove that modification or termination of a permanent protection order is justified. Domestic violence with a reasonable prospect of recurrence constitutes a reason not to lift or modify the order. The court's discretion in reviewing the facts of each case is paramount.
[7] Because the permanent protection order will be terminated on the grounds above, we need not address the issue of whether it automatically terminated when Robin's children reached age 18.
[1] I agree with the majority that Robin Freeman (now known as Robin Abdullah) is not entitled to attorney fees.
[2] The modification statute was not changed when the DVPA was amended to allow for permanent orders of protection in 1992. The only amendments that have been made to the modification statute since its 1984 enactment address personal service and service by publication. See Laws of 2008, ch. 287, § 3; compare RCW 26.50.130 with Laws of 1984, ch. 263, § 14.
[3] The factors are as follows:

(1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.
Carfagno, 288 N.J.Super at 435, 672 A.2d 751.
[4] It should be noted that no court outside of New Jersey has adopted these factors wholly.
[5] I use first names for the purpose of clarity.
[6] Legal Voice, Washington State Coalition Against Domestic Violence, and Sexual Violence Law Center filed an amicus brief (hereinafter Amici Curiae).
[7] Amici Curiae cite Roberts v. Bucci, 218 S.W.3d 395 (Ky.Ct.App.2007); Mitchell v. Mitchell, 62 Mass.App.Ct. 769, 821 N.E.2d 79 (2005); Dvorak v. Dvorak, 635 N.W.2d 135 (N.D.2001). Br. of Amici Curiae at 18.
[8] This factor is not relevant in this particular case because there is no evidence drugs or alcohol played a role in Rob's previous acts of domestic violence.
[9] This factor is only relevant if it tends to show the respondent is physically incapable of committing domestic violence. This will be the case only in very narrow circumstances, not present here, because domestic violence includes physical and sexual violence, threats of physical violence, and stalking. RCW 26.50.010(1)(a). Stalking includes harassing phone calls and electronic communications. RCW 9A.46.110(4). One would need to be very ill to be rendered physically incapable of sending threatening e-mails or making harassing phone calls.
[10] Drugs were not a factor in the abuse in the first place; therefore, the absence of drugs does not make it less likely that Rob will engage in domestic violence in the future.
[11] Rob's injury has not rendered him incapable of engaging in domestic violence, so it is difficult to see how his loss of a hand impacts the likelihood of his resuming acts of domestic violence.