FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 OCT 15 AM 8: 56

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DARLA K. PADGETT,<br><br>                    Respondent,<br><br>v.<br><br>JOSEPH PADGETT,<br><br>                    Appellant. | No. 76543-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: October 15, 2018 |

CHUN, J. — During the acrimonious marriage dissolution between Darla and Joseph Padgett, the court entered mutual restraining orders, including a prohibition against the possession of weapons. After the State charged Joseph[1] with possession of depictions of minors engaged in sexually explicit conduct, the court imposed additional restraints on him. The dissolution decree, entered in August 2014, lifted the restraints as to Darla, but continued the restraints against Joseph. The court allowed Darla to keep Joseph's weapons until the conclusion of the criminal proceedings. The State dismissed the criminal charges on procedural grounds in December 2015.

In December 2016, Joseph filed a CR 60(b)(6) motion to vacate the restraining order and protection order provisions in the decree. He argued that the prospective application of the order was inequitable. The trial court denied

---

[1] For convenience, this opinion refers to the parties by their first names. We mean no disrespect.

the motion to vacate and Joseph appeals. Because the CR 60(b)(6) motion to vacate was an improper attempt to circumvent the statutory process to terminate the protection and restraining orders, we affirm.

I.

BACKGROUND

Darla and Joseph married on February 6, 1998, in California. The parties separated on November 8, 2010. A superior court commissioner granted Darla's request for an ex parte temporary restraining order against Joseph. The order restrained Joseph from contact with Darla and their minor son.

On November 29, 2010, another commissioner denied entry of a full domestic violence protection order, finding "[a] preponderance of the evidence has not established that there is domestic violence." The court entered mutual restraining orders. The orders stated the parties should not have direct or indirect contact, except through counsel. A later modification of the mutual restraining order allowed for Joseph to have limited e-mail contact with Darla.

In January 2011, the State charged Joseph with one count of possession of depictions of minors engaged in sexually explicit conduct. The court entered an order in the criminal case prohibiting Joseph from contact with Darla and all minor children. On February 22, 2011, the court released Joseph on his own personal recognizance on the condition he not possess weapons and have no contact with Darla or any minors.

On September 26, 2011, a superior court commissioner entered a new temporary restraining order imposing mutual restraints on Joseph and Darla.

2

The commissioner noted a "substantial change in circumstances" since the temporary restraining order entered in November 2010: "Respondent is now charged with a crime that requires consideration of RCW 26.09.191 as to contact with a child and is in fact subject to a no contact order that prohibits contact with any child at this time." The new order restrained Joseph from coming within one thousand feet of Darla and their minor son. The order also prohibited both Darla and Joseph from disturbing the other party and possessing firearms or ammunition.

On October 10, 2011, the trial court entered a dissolution decree, but reserved resolution of the property distribution and parenting plan pending trial. The decree specified the September 26, 2011 restraining order remained in effect pending trial.

The trial on the property distribution and the parenting plan occurred on August 25, 2014. Despite proper notification, Joseph did not appear. Darla explained she wanted the restraining order maintained until resolution of the criminal case because she and their child were considered witnesses. Darla addressed the family court restraining order, which stated she was in potential danger and increased the physical scope of the restraining order against Joseph to one thousand feet. She also testified about the role Joseph played in the destruction of her business.

The findings of fact and conclusions of law and final dissolution decree entered after trial maintain many of the provisions of the September 26, 2011

restraining order. The conclusions of law state: "Mr. Padgett appeared in court and signed the restraining order entered . . . on September 26, 2011. This order and decree continues those exact same restraints on Mr. Padgett. It ends the restraints on Ms. Padgett." In the final dissolution decree, the trial court imposed additional restraints on Joseph in section 1.1 entitled "Restraining Order Summary." This section included several restrictions:

> Respondent is restrained from knowingly remaining within 1000 feet of the home, work place of Darla Padgett or [their minor son] as long as he is a minor.
>
> Respondent is restrained from going onto the grounds or entering the home, workplace, or school of Darla or [their minor son].
>
> Joseph Padgett is restrained and enjoined from molesting, assaulting, harassing, or stalking Darla Padgett and [their minor son].
>
> Darla may continue to store Joseph Padgett's firearms until such time as all criminal proceedings and [sic] him are terminated and he is allowed to possess firearms.

In section 3.9, entitled, "Protection Order," the trial court provided, "Joseph Padgett should not contact Darla Padgett in any way. Joseph Padgett should not contact [their minor son] in any way as long as he is a minor."

The State dismissed the criminal charges against Joseph after the court granted a motion to suppress.

In December 2016, Joseph moved under CR 60(b)(6) to vacate the restraining and protection order sections of the August 2014 dissolution decree. He argued the ambiguity and unknown duration of the terms of the restraining

4

order and protection order in the decree and the dismissal of the criminal charges against him made the prospective application of the orders inequitable.

At the hearing on the motion to vacate, Darla argued Joseph used the court system to abuse her by intentionally filing frivolous actions, thereby forcing her to expend time and money. Darla also raised concerns about Joseph's mental instability and his willingness to place her in danger. She told the court she was "scared to death of this man." Darla told the court:

> That restraining order is the only tool that I have to protect myself. That is the only thing that's given us any peace of mind for the last years. Now my son has turned 18 . . . He's going off to college. And now this will escalate because Mr. Padgett won't be able to use him to harass me; he'll find some other way.

The court denied Joseph's motion to vacate. It maintained the prospective application of the judgment, stating, "Ms. Padgett provided evidence at the time of trial as to why it was appropriate to have such an order and that she was fearful of Mr. Padgett. She remains fearful of Mr. Padgett today, and it is equitable . . . for the order to remain in place."

Joseph appeals.

II.

ANALYSIS

A.    CR 60(b)(6) Motion to Vacate

Joseph contends the trial court abused its discretion by declining to vacate the protection and restraining orders. He argues the trial court erred by failing to find the prospective application of the protection and restraining orders to be inequitable. He claims the dissolution decree's language is ambiguous language

and points to the court's dismissal of all criminal charges, the early finding he had not committed domestic violence, and the lack of findings to support the restraining and protection orders. We disagree with his argument.

CR 60(b)(6) allows relief from judgment when "[t]he judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The rule "deal[s] with problems arising under a judgment that has continuing effect, where a change in circumstances after the judgment is rendered makes it inequitable to enforce the judgment." Metro. Park Dist. of Tacoma v. Griffith, 106 Wn.2d 425, 438, 723 P.2d 1093 (1986). A vacated judgment has no effect, leaving the parties as though the judgment had never been entered. In re Marriage of Leslie, 112 Wn.2d 612, 618, 772 P.2d 1013 (1989).

On review of an order denying a motion to vacate, "only 'the propriety of the denial *not* the impropriety of the underlying judgment' is before the reviewing court." State v. Gaut, 111 Wn. App. 875, 881, 46 P.3d 832 (quoting Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980)). As a result, "an unappealed final judgment cannot be restored to an appellate track by means of moving to vacate and appealing the denial of the motion." Gaut, 111 Wn. App. at 881.

An appellate court will not overturn a trial court's decision on a motion to vacate a judgment under CR 60(b)(6) absent an abuse of discretion. Gustafson

v. Gustafson, 54 Wn. App. 66, 69-70, 772 P.2d 1031 (1989). "Discretion is abused when exercised on untenable grounds or for untenable reasons." Scanlon v. Witrak, 110 Wn. App. 682, 686, 42 P.3d 447 (2002).

Here, Joseph argues the trial court failed to make the requisite finding of domestic violence necessary for a protection order under RCW 26.50.060. His argument challenges the legal justification for the original order. A CR 60(b) motion does not allow a litigant to challenge the underlying judgment. "The exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion." Bjurstrom, 27 Wn. App. at 451. Therefore, any defects in the legal justification for the original order should have been addressed on appeal of that order. Because Joseph did not appeal the order, he cannot now raise these untimely arguments.

Furthermore, the Domestic Violence Protection Act (DVPA) provides specific procedures for modification or termination of a permanent order of protection. RCW 26.50.130. Under the DVPA, the respondent must make a motion to modify or terminate in order to obtain relief from a protection order's terms. RCW 26.50.130. The motion must include a declaration setting forth the facts supporting the request, which the court will deny unless the declaration establishes adequate cause for a hearing. RCW 26.50.130(2). By attempting to collaterally attack the protection order through a CR 60(b) motion to vacate, Joseph did not comply with the DVPA filing requirements for a motion to modify or terminate.

Joseph cannot meet the legal requirements for modification or termination of the protection order under the DVPA. The court may not modify a permanent protection order "unless the respondent proves by a preponderance of the evidence that the requested modification is warranted." RCW 26.50.130(4). The court may not terminate a permanent order of protection "unless the respondent proves by a preponderance of the evidence that there has been a substantial change in circumstances such that the respondent is not likely to resume acts of domestic violence against the petitioner or those persons protected by the protection order if the order is terminated." RCW 26.50.130(3)(a).

For termination of the protection order, "[t]he relevant analysis" includes consideration of whether the Joseph can prove "an unlikelihood of committing future acts of domestic violence and whether the facts support a current reasonable fear of imminent harm." In re Marriage of Freeman, 169 Wn.2d 664, 674, 239 P.3d 557 (2010) (emphasis omitted). The petitioner bears no burden of proving current reasonable fear of imminent harm by the respondent. RCW 26.50.130(3)(a). But the facts must support a finding that the petitioner's fear of imminent harm is reasonable. Freeman, 169 Wn.2d at 674. "The facts supporting a protection order must reasonably relate to physical harm, bodily injury, assault, or the fear of imminent harm. It is not enough that the facts may have justified the order in the past. Reasonable likelihood of imminent harm must be in the present." Freeman, 169 Wn.2d at 674 (emphasis omitted).

The record does not support Joseph's claim that Darla's fear stems from conduct related to the dismissed criminal charges. Darla testified about her fear of Joseph and his ongoing attempts to harass her. The trial court's oral ruling reflected its consideration of the standards for termination of a restraining order. The court found Darla had demonstrated her continuing fear. This finding resulted in the denial of the motion to vacate and maintenance of the restraining order. Given the evidence presented, the trial court did not abuse its discretion by retaining the provisions of the restraining order.

Because Joseph attempts to collaterally attack the legal basis for the original restraining and protection orders and to circumvent the termination requirements stipulated by the DVPA, the trial court did not abuse its discretion in denying the motion to vacate.

B.    Second Amendment Right to Bear Arms

Joseph contends the trial court's failure to vacate the restraining order infringes on his Second Amendment Right to bear arms. Specifically, he asserts that, because there is no pending criminal charge or evidence of domestic violence, the public-interest justification for restraining him from bearing arms is absent. He argues the restraining order amounts to a permanent ban on his right to bear arms.

The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." District of Columbia v. Heller, 554 U.S. 570, 635, 128 S. Ct. 2783, 171 L.Ed.2d

637 (2008). A valid restraining order does not violate the Second Amendment right to bear arms. Under 18 USC 922(g)(8), a person may not possess firearms or ammunition if subject to a court order that:

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

The September 2011 restraining order included a provision based on 18 USC 922(g)(8), "[e]ffective immediately and continuing as long as this restraining order is in effect, the restrained person may not possess a firearm or ammunition." The dissolution decree continued this restraint. As discussed, the protection and restraining orders remain in effect until properly challenged through a motion to modify or terminate under the DVPA. Joseph cannot regain his right to own weapons by evading this procedure through a motion to vacate. Because a valid restraining order exists against Joseph, his right to bear arms is not violated.

C.    Due Process

Joseph also argues denial of the motion to vacate violates due process because the orders are too vague and inadequate to give notice of prohibited conduct. But Joseph signed the restraining order in September 2011, and he did not appeal it. He failed to appear at his dissolution proceedings and, again, he

did not appeal the terms of restraint and protection entered in the dissolution decree in 2014.

We affirm the denial of the CR 60(b) motion to vacate.

Chun, J.

WE CONCUR: