IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| KARINA LOUISE ASBACH, | No. 55158-6-II |
| Respondent, | |
| v. | |
| ADAM COUTO, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—When Adam Couto and Karina Louise Asbach dissolved their marriage in 2012, the trial court entered a permanent restraining order prohibiting Couto from contacting Asbach for any reason other than parenting their two children. In 2020, the children returned from Couto's house and told Asbach that Couto had displayed alarming levels of anger toward them, that they were afraid, and that they did not want to return to his home.

Asbach petitioned for a domestic violence protection order on behalf of the children. Following an evidentiary hearing, the trial court granted the protection order, provided for the children to have supervised visitation with Couto, required Couto to participate in further domestic violence treatment, ordered Couto to surrender any firearms or other weapons in his possession, and awarded Asbach attorney fees and costs.

Couto appeals, arguing that insufficient evidence supported a finding of domestic violence and that the protection order effectively resulted in a major modification of the parenting plan without complying with the statutory scheme governing such modifications. We disagree and affirm.

FACTS

Asbach and Couto share two children from their previous marriage, AC and NC, who were 14 and 11 years old, respectively, at the time the trial court entered the protection order.

As part of their dissolution in 2012, Asbach obtained a permanent restraining order prohibiting Couto from contacting Asbach for any reason other than parenting the children. The trial court found Couto had engaged in acts of domestic violence and in abusive use of conflict. The trial court ordered Couto to participate in domestic violence treatment and certain parenting classes. The parenting plan provided that the children were to live primarily with their mother, but spend one night a week and every other weekend with their father.

About four years later, Couto sought to modify the parenting plan. The trial court entered a new parenting plan that generally contained the same residential schedule. The new parenting plan also retained the findings that Couto had engaged in acts of domestic violence and in abusive use of conflict. It removed the reference to domestic violence treatment and parenting classes, presumably because Couto had completed those requirements.

About two years later in 2020, the children told their mother they were afraid of Couto after a visit at his home. Asbach filed a petition for an order for protection on behalf of both children. In a declaration supporting the petition, Asbach recalled multiple incidents that the children described to her. In one incident, Couto reportedly became so angry while yelling at the children that he slammed a cabinet hard enough to break it. Couto continued to scream and yell at the children after breaking the cabinet. The children told Asbach they did not want to return to Couto's home. NC contacted her counselor who left a message with law enforcement.

The following weekend, the children returned to Couto's house. NC got into an argument with Couto, and Couto proceeded to throw NC's shoes at her door while NC hid in her closet out of fear. Twenty minutes later, NC went downstairs to find a bowl of pasta. AC informed NC that their father said she was not allowed to eat until she had cleaned the main bathroom, cleaned the art table, and wrote an essay on respect with a minimum of three paragraphs. Couto rejected NC's first attempt at the essay and demanded she rewrite it.

Asbach also recalled incidents of domestic violence against her by Couto during their marriage. She declared that the children were in abject fear of imminent physical harm, bodily injury, or assault.

The trial court entered a temporary order of protection for both children and set a hearing. The trial court allowed Couto to have professionally supervised visitation with the children twice per week in the meantime.

At a hearing on the petition, Asbach testified that she did not believe either of the children would feel safe with Couto if there was not a protection order in place. Couto also testified at the hearing. He recalled raising his voice at NC because she was being disrespectful. Couto testified that the cabinet door fell because it had been loose and he had not fixed it. He explained, "I might have said something inappropriate about the fact that the cabinet door was now broken. And at that point, you know, I felt rattled." Clerk's Papers (CP) at 180-81. Couto continued, "[A]t that point my domestic violence training kicked in, and that's when I decided I needed to leave the house and take a time out." CP at 181. He acknowledged leaving NC a note with chores to do but denied conditioning her lunch on completion of the chores. Couto testified that he had not seen any expressions of fear from either child, and he did not believe that they were afraid of him.

Couto testified to raising his voice at NC another time but could not recall anything specific about throwing shoes. He explained that sometimes he tossed the children's shoes down the hallway for them to put in their room.

At the conclusion of the hearing, the trial court found that a preponderance of the evidence supported a finding that Couto committed domestic violence against the children. The trial court found, "[T]he fear of physical harm or bodily injury or assault on the children's part is reasonable, given their specific description of the escalating anger and of the breaking of furniture and given the Court finds Ms. Asbach more credible than Mr. Couto in his description." CP at 208-09.

The trial court entered a one-year order for protection as to both children. The trial court also entered an order requiring Couto to surrender all firearms or other dangerous weapons and to engage in domestic violence treatment. The trial court ordered supervised visits to continue as outlined in its temporary protection order, but the trial court acknowledged that a petition for modification of the parenting plan was pending before the family law court and explained that the issue of visitation could be further addressed in that action. The trial court again required Couto to participate in domestic violence treatment. The trial court awarded Asbach $2,918 in attorney fees and costs.

Couto appeals the protection order, order to surrender weapons, and award of attorney fees.

ANALYSIS

I. SUFFICIENT EVIDENCE

Couto argues that the trial court erred by granting the domestic violence protection order because insufficient evidence supported a finding of domestic violence. We disagree.

We review a trial court's decision to grant a domestic violence protection order for abuse of discretion. *Rodriguez v. Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017). Thus, a superior court's decision will not be disturbed on appeal unless its decision was manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). A domestic violence protection order must be supported by a preponderance of the evidence. *See Reese v. Stroh*, 128 Wn.2d 300, 312, 907 P.2d 282 (1995). Under this standard, the trial court here had to find that it was more likely than not that domestic violence occurred. *Freeman*, 169 Wn.2d at 672-73. RCW 26.50.010(3)(b) defines "'[d]omestic violence,'" in relevant part, as "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault . . . [between] family or household member[s]."

"We defer to the trial court's determinations on the persuasiveness of the evidence, witness credibility, and conflicting testimony." *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009). The rules of evidence, including the hearsay rule, do not apply in protection order proceedings under chapter 26.50 RCW. ER 1101; *Blackmon v. Blackmon*, 155 Wn. App. 715, 722, 230 P.3d 233 (2010). "[C]ompetent evidence sufficient to support the trial court's decision to grant or deny a petition for a domestic violence protection order may contain hearsay or be wholly documentary." *Blackmon*, 155 Wn. App. at 722.

Couto argues that no credible evidence supported the domestic violence protection order because all of the evidence offered by Asbach was either child hearsay, hearsay within hearsay, or speculation. But the rules of evidence do not apply in domestic violence protection order proceedings, and Couto acknowledges that the evidence the trial court considered was admissible in this type of proceeding. *Id.* Couto's argument boils down to his belief that his evidence was

more credible than Asbach's. However, we defer to the trial court's determinations of witness credibility and persuasiveness of the evidence. *Snyder*, 152 Wn. App. at 779. The trial court found Asbach more credible than Couto; we do not second guess that determination.

The trial court found the children's fear of physical harm, bodily injury, or assault was reasonable "given their specific description of the escalating anger and of the breaking of furniture and given the Court finds Ms. Asbach more credible than Mr. Couto in his description." CP at 208-09. The trial court concluded that there was evidence Couto committed domestic violence against the children by a preponderance of the evidence. Based on this record, and deferring to the trial court's credibility determinations, we hold that the trial court did not abuse its discretion.

## II. MODIFICATION OF THE PARENTING PLAN

Couto also argues that the trial court erred by effectively granting a major modification of the parenting plan without following the statutory scheme required under chapter 26.09 RCW. We disagree.

RCW 26.50.060 authorizes a trial court to issue domestic violence protection orders restraining contact between a parent and child. RCW 26.50.060(1)(d) expressly authorizes the trial court to make residential provisions for minor children and states that a full parenting plan is not required in these protection order proceedings.

Entering a domestic violence protection order restraining contact between a parent and child, as the trial court did here, does not amount to a major modification of a parenting plan as contemplated by chapter 26.09 RCW. *In re Marriage of Stewart*, 133 Wn. App. 545, 554-55, 137 P.3d 25 (2006). This court faced the same argument in *Stewart* and explained,

> Here, what occurred was a temporary interruption of contact pending further proceedings in family court, as authorized by the protection order statutes to protect children from the immediate threat of domestic violence. No rational person would voice an objection to temporary suspension of contact where a parent has physically abused his children. The legislature considers domestic violence by way of infliction of fear to be equally worthy of swift intervention.

*Id.* at 555.

Here, the trial court ordered supervised visits to continue as outlined in its temporary protection order but acknowledged that a petition for modification of the parenting plan was pending before the family law court and noted the issue of visitation could be best addressed in that action. The order temporarily suspending Couto's contact with his children based on the trial court's finding of domestic violence was a proper exercise of the trial court's discretion.

### III. ATTORNEY FEES AND COSTS

Asbach requests attorney fees and costs on appeal under the attorney fees provision of the Domestic Violence Protection Act, chapter 26.50 RCW, and RAP 18.1. RCW 26.50.060(1)(g) authorizes an award of reasonable attorney fees incurred by a petitioning party seeking an order of protection. We grant Asbach's request.

We affirm.

No. 55158-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Cruser, J.

Veljacic, J.