# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| ALLISON ANDREA WELCH, | No.  56206-5-II |
| Respondent, | |
| v. | |
| ANDREW MICHAEL WELCH, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Andrew M. Welch appeals the superior court's domestic violence protection order (DVPO) protecting Allison A. Welch and their minor children.[1]  Andrew argues the superior court abused its discretion in entering the DVPO because there was insufficient evidence to support the finding that Allison reasonably feared imminent infliction of domestic violence.  The superior court did not abuse its discretion.  We affirm the superior court's DVPO.

## FACTS

Allison and Andrew were married in 2005 and have two minor children.  In March 2021, Andrew fell while intoxicated and suffered a traumatic brain injury.  After being released from the hospital, Andrew continued drinking and his behavior became concerning for Allison.  In June 2021, Allison moved the children to her parents' home.  In July 2021, Allison filed for dissolution and obtained an ex parte restraining order.  On August 3, 2021, Allison filed a petition for a DVPO.

---

[1] Because the parties share the same last name we refer to them by first names for clarity, we intend no disrespect.

In support of the petition, Allison included a declaration filed in support of the ex parte restraining order documenting Andrew's aggressive and threatening behavior. Allison explained that Andrew had a history of drinking throughout the marriage, however, Andrew's drinking began escalating in 2019 when Allison was treated for cancer. In August 2020, Andrew was hospitalized twice due to drinking and seizures. Andrew was also involuntary committed for five days due to threats of suicide. In November 2020, Andrew entered alcohol treatment twice, but after being released from treatment, Andrew continued drinking. In March 2021, Andrew became extremely intoxicated during a birthday party for one of the couple's children. He fell and suffered a traumatic brain injury, which required 42 days of hospitalization.

Allison declared that after his release from the hospital, Andrew continued drinking and became increasingly aggressive. Ultimately, Allison asked Andrew to leave the family home and live with his parents. After Andrew left the family home, Allison began receiving notifications from the home security system that the cameras were being accessed. Allison believed Andrew was using the security system cameras to monitor her in the home. Allison covered the security cameras with tape, but would return to the home to find the tape removed.

In June 2021, Allison returned to her parents' house because she and the children did not feel safe in their home. One day Andrew let himself into Alison's parents' house and saw her talking on the phone. Andrew demanded that Allison tell him who she was talking to. Allison became fearful and closed herself in another room. Andrew left Alison's parents' house and then called Allison's cell phone incessantly for the next several hours.

On July 2, 2021, Andrew told Allison he was going to the family home to mow the lawn. When Allison returned, the lawn was not mowed, but someone had accessed her email account

and forwarded several emails to Andrew's email address. Allison then changed the locks to the family home.

On July 3, 2021, Andrew appeared at the house demanding to know why he had been locked out of the house. Andrew claimed he needed to get dog food, and Allison went in the house with him. Andrew then began yelling at Allison and told her he would rather burn the house down than allow her to keep it. Allison walked out of the house, and Andrew followed. When Andrew saw that the neighbors were outside, he left.

On July 8, 2021, Andrew came to the family home and knocked on the door. When Allison did not answer, Andrew began banging on the doors and windows. Andrew called Allison's cell phone 24 times before he left the house. On July 15, 2021, Allison learned that Andrew had been forced to leave his parents' house as a result of his drinking. And on July 22, Andrew called Allison's cell phone nine times in a three-hour period.

In her petition for the DVPO, Allison explained that an ex parte restraining order had been granted on July 23. The restraining order was provided to Andrew by email, however, he could not immediately be located to be personally served. According to Allison, Andrew called and texted her "incessantly" between July 23 and July 27. Clerk's Papers (CP) at 5. On July 28, Allison found a dog bone on her car when she left her office. Then Allison received a text from Andrew asking if she received the bone.

On July 29, Allison learned that Andrew had been staying at a hotel 400 feet away from her office. That same day Allison received several text messages from Andrew demanding to know where she was going with the children for the weekend. Andrew also called to tell Allison

he was staying with a neighbor 1,010 feet from the family home. The next day, Allison learned that Andrew was at the family home.

On August 1, Allison returned home and reviewed the home security cameras. The cameras showed Andrew broke into the home through a window. The cameras also showed Andrew manipulating the cameras outside of the house. And additional footage from the camera shows that Andrew got into a confrontation with a neighbor about the divorce case. Allison stated,

> I have a genuine fear of imminent physical harm and that Andrew is stalking me and our children. I could not sleep last night. Our children were not able to sleep last night, and they told me they are scared of their father coming to our home and breaking in.

CP at 6. On August 3, the superior court entered a temporary DVPO. The same day, Andrew's attorney accepted service of the temporary DVPO.

Andrew filed a responsive declaration explaining that he has suffered short-term memory loss and has difficulty remembering things. He acknowledged that he had sometimes acted inappropriately, but he could not remember much of it. Andrew denied surveilling or stalking Alison or the children. He also denied ever being aggressive or threatening.

In her reply, Alison noted that Andrew continued to contact her despite her requests that he stop doing so. Alison also stated that Andrew had been contacting their business office.

On August 17, 2021, the superior court held a hearing on the DVPO. The superior court noted that, due to Andrew's substance abuse disorder, he had "lost awareness of the impact of his addiction on others including abusive, emotional, and traumatic harm to these minor children." Verbatim Report of Proceedings at 11. The superior court also noted that there was more than a preponderance of the evidence supporting issuing the DVPO.

4

The superior court entered a DVPO against Andrew. The superior court found that Andrew had committed acts of domestic violence and "represents a credible threat to the physical safety of [Alison and the children]." CP at 86. As part of the DVPO, the superior court ordered that Andrew participate in a psychological evaluation with a parenting component; however, the superior court reserved any decision about drug or alcohol treatment for the family court handling the dissolution.

Andrew appeals.

ANALYSIS

Andrew argues that the superior court abused its discretion in entering the DVPO because there was insufficient evidence to show that Andrew had committed acts of domestic violence by the infliction of fear of imminent physical harm, bodily injury, or assault. We disagree.

We review a superior court's decision granting a DVPO for an abuse of discretion. *In re the Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). We will not reverse a superior court's decision for an abuse of discretion unless it is manifestly unreasonable, or based on untenable grounds or untenable reasons. *Id.*

Under former RCW 26.50.020(1)(a) (2019), a person may petition for a DVPO alleging that he or she has been the victim of domestic violence committed by the respondent. "Domestic violence" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one intimate partner by another intimate partner . . . ." Former RCW 26.50.010(3)(a) (2019). Intimate partners include spouses. Former RCW 26.50.010(7)(a). Following a hearing on the petition, the superior court may restrain the respondent from committing acts of domestic violence

and order "other relief as it deems necessary for the protection of the petitioner and other family or household members sought to be protected . . . ." Former RCW 26.50.060(1)(a), (f) (2019).

Here, Allison documented Andrew's increasingly erratic and aggressive behavior due to his continued drinking and traumatic brain injury. Allison identified aggressive behavior, such as banging on the doors and windows and threatening to burn down the house, which would create a fear of imminent physical harm, bodily injury, or assault. And Andrew created a fear of imminent physical harm, bodily injury, or assault through his bizarre behavior and his refusal to respect boundaries. Based on Andrew's behavior, the superior court did not abuse its discretion by determining Andrew created a fear of imminent physical harm, bodily injury, or assault.[2] Accordingly, the superior court did not err by entering the DVPO.

Alison also requests reasonable attorney fees under RAP 18.1 and former RCW 26.50.060(1)(g) (2019). Under RAP 18.1, we may award attorney fees if applicable law grants a party the right to recover reasonable attorney fees. Former RCW 26.50.060(1)(g) authorizes an award of attorney fees for persons seeking an order of protection.[3] *See, e.g., In re Freeman*, 169 Wn.2d at 676 (acknowledging RCW 26.50.060(1) authorizes awarding attorney fees). Accordingly, we grant Alison's request for reasonable attorney fees.

---

[2] While the parties frame the issue here as whether Andrew's behavior created a fear of imminent physical harm, we note that Andrew's behavior would also meet the statutory definition of stalking and, therefore, be an act of domestic violence. *See* RCW 9A.46.110.

[3] We recognize that the legislature has since repealed chapter 26.50 RCW in order to create a single, comprehensive statutory scheme governing protection orders. LAWS OF 2021, ch. 215. Even if we determined that the new law applied to Alison's request for attorney fees, the new statutory scheme contains the same language authorizing an award of attorney fees as former RCW 26.50.060(1)(g). LAWS OF 2021, ch. 215 § 39(i); RCW 7.105.310(1)(j).

No. 56206-5-II

CONCLUSION

We affirm and grant Alison's request for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

WORSWICK, P.J.

MAXA, J.

7