THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SEATTLE POLICE DEPARTMENT, | ) | No. 81901-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEMETRIUS JONES, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Demitrius Jones appeals the renewal of an extreme risk protection order (ERPO) requested by the Seattle Police Department (SPD). Jones challenges three findings of fact supporting the renewal order. Because sufficient evidence supports two of the three challenged findings, and these findings are sufficient to support the renewal of the protection order, we affirm.

FACTS

Demetrius Jones worked as a hot dog vendor in the Pioneer Square area of downtown Seattle from 2013 to 2018. He worked Friday and Saturday nights and his job required frequent contact with inebriated customers leaving nearby bars and clubs. Because Jones was concerned about aggressive customers, he obtained a concealed pistol license in 2017.

Seattle police officers in the area had frequent interactions with Jones and knew he often carried a firearm while working. Officer Brian Hewitt identified Jones as a "source of disturbances and contention" in the area based on several incidents in which Jones brandished and recklessly handled firearms while working at his hot dog stand. Because of these incidents, as well as the fact that SPD was aware of five firearms registered to Jones, Officer Hewitt filed a petition for an ERPO on behalf of SPD on June 21, 2018. The trial court issued a temporary ex parte ERPO the same day and set a hearing date for July 3, 2018.

At the hearing, Jones and Officer Hewitt testified about three incidents forming the basis for SPD's request. On May 7, 2017, officers overheard Jones yelling racially inflammatory statements at two women in line at his stand. When the women's two male friends confronted Jones, he placed his firearm on a cooler behind the hot dog stand and punched the two men in the face. On June 11, 2017, Jones got into an argument with a customer at his stand. Jones threated to "pop her" while lifting his shirt to display a firearm in his waistband. On June 17, 2018, Jones yelled at officers arresting a man nearby his hot dog stand, stating "I can't wait to take you out" and "I'll fight you right now."

Jones disputed the details of these events. Although he admitted he had an altercation with four people on May 7, 2017, Jones said he received permission from a nearby SPD officer to place his firearm on the cooler and that he and the group later resolved their disagreement peacefully. Jones completely denied the events of the June 11, 2017 incident. Regarding the June 2018 incident, Jones testified that, after observing officers arrest a man, he asked the man if he was okay and an officer responded "mind your [own] fucking business." Jones

described other instances where he claimed he had been the victim of violence while at work and that SPD officers had failed to assist him.

The trial court granted SPD's petition and entered an ERPO for one year. The court found (1) Jones had unlawfully or recklessly used, displayed, or brandished a firearm; (2) he had recently committed or threatened violence; (3) he had shown within the previous 12 months a pattern of acts or threats of violence; and (4) he had a history of use, attempted use, or threatened use of physical force against another person. As a condition of the ERPO, the court ordered Jones to surrender all firearms in his possession to law enforcement. It also found that a mental health evaluation was appropriate and ordered Jones to obtain one within 60 days and to file proof with the court within 15 days of the evaluation's completion.

At Officer Hewitt's request, the court asked Jones about the whereabouts of his five registered firearms. Jones denied having any firearms, claiming they had been sold, gifted, stolen, or confiscated by police. After the ERPO hearing, when Jones failed to surrender any weapons, Officer Hewitt obtained a search warrant for his apartment. On July 14, 2018, officers found four firearms, some of which were in his bedroom, as well as rifle scopes, ammunition including high-capacity magazines, and papers indicating Jones's dominion and control over the firearms. Officers then arrested Jones while he was working at his hot dog stand, where they recovered an additional firearm in a backpack at his feet. None of the recovered firearms were registered to Jones.

At an August 3, 2018 review hearing, the court again asked Jones where his five firearms were. Jones told the court that he had not had those five firearms

for a number of years that the firearms had been gifted, sold, or stolen, and that one was being held in evidence by Tacoma police. The court instructed Jones to file a "declaration of non-surrender" accounting for the firearms. Jones filed this declaration on August 23, 2018. The declaration generally indicated that his firearms had been sold or gifted, but he provided no receipts of sale, did not identify the dates on which sales or gifts occurred, and did not identify the individuals to whom he sold or gifted any firearms. At a September 6, 2018 compliance hearing, the trial court reviewed the declaration and concluded it did not adequately establish that he no longer had access to those firearms.[1]

In June 2019, SPD filed a motion to renew the ERPO. SPD alleged Jones had violated the ERPO, had demonstrated a pattern of acts or threats of violence within the prior 12 months, has a history of the use, attempted use, or threatened use of physical force against others, and has a dangerous mental health issue. SPD also alleged Jones had pending harassment, criminal trespass, and disturbing the peace charges in Tacoma Municipal Court dating from incidents occurring on September 17, 2018. SPD recounted the discovery of firearms inside Jones's apartment and on his person after the issuance of the ERPO and indicated that Jones was facing criminal charges in King County District Court for unlawful possession of a firearm and making false statements. Finally, SPD contended that Jones had failed to obtain the court-ordered mental health evaluation.

---

[1] It appears from the transcript of this hearing that the trial court entered an order finding Jones not in compliance with the ERPO, but the order filed after the September 6, 2018 review hearing is not in the record before us.

- 4 -

The court held a renewal hearing on September 4, 2020. Officer Hewitt testified that the allegations in SPD's renewal petition were true. He testified that after the ERPO hearing in June 2018, Jones had represented to him that he would turn in any firearms in his possession either to SPD or to the Tacoma police, but failed to do so. And he explained to the court that on July 13, 2018, the police recovered five firearms from Jones's apartment and person after the court had ordered him to surrender all firearms. Officer Hewitt explained that some of these weapons were found in Jones's bedroom and some had purchase receipts belonging to Jones. When the police arrested Jones, he had a gun on his person that had been purchased by his roommate "a couple days after the ERPO was signed." He further testified that "most of the issues that we have had with Mr. Jones [have] now subsided. We don't have any issues. He no longer works up in . . . Seattle as far as I'm aware, doing the hot dog stand." But Officer Hewitt stated that because Jones had violated the ERPO, was being prosecuted criminally for having done so, and was being evaluated for his mental health competency in that criminal proceeding, the SPD asked that the ERPO remain in effect until the criminal proceeding had been completed.

Jones, appearing with a public defender, did not testify at this hearing. His counsel argued that there was insufficient evidence to renew the ERPO because SPD's request was based on events that had occurred two years earlier. Jones contended that the evidence did not establish that he currently posed a significant threat of personal harm to himself or others.

Jones also contended he had completed the ordered mental health evaluation and had undergone two separate competency evaluations in 2019 and

2020 in criminal cases. Counsel suggested that Jones had submitted proof of compliance with the ERPO at a January 11, 2019 hearing and that the court had previously found him to be in compliance with this part of the ERPO.[2] Counsel also contended that Jones had resubmitted proof of compliance with this aspect of the order.

On September 14, 2020, after the renewal hearing, Jones filed a pleading entitled "Mental Health Evaluation." Jones's counsel represented that the documents supported a finding that Jones had completed a mental health evaluation and that counsel had served the documents on SPD and the prosecutor's office before the September 4, 2020 hearing. Attached to the pleading was a one-page document entitled "Comprehensive Life Resources Discharge Summary," that indicated Jones had presented for an "intake assessment" on August 13, 2018, but then "declined services" leading the provider to conclude it had "insufficient information at assessment to make a diagnosis."

Also attached to the pleading was a March 5, 2020 forensic evaluation conducted as the result of a July 2019 King County District Court order for an evaluation of Jones's competency to proceed to trial. The evaluator concluded Jones did not have a major mental disease or defect and had the capacity to understand the criminal proceedings pending against him.

The trial court granted the renewal of the ERPO through March 30, 2021. The court found that Jones had access to firearms, as evidenced by Officer Hewitt's testimony that he was arrested in possession of a gun registered to his

---

[2] We do not have any pleadings or transcripts from the January 2019 hearing in the record on appeal.

roommate. The court also found that Jones violated the ERPO by possessing guns on his person and in his apartment. And the court found that Jones still had not accounted for five firearms registered in his name. The court rejected Jones's argument that the actions that formed the basis for SPD's renewal petition were too remote in time, finding that Jones's decision to possess a firearm "so soon after the entry of the order . . . demonstrate[d] an intention to attempt to get around the surrender of firearms by taking advantage of having access to someone else's firearms." For these reasons, the court found that Jones's behavior "presents an imminent threat of harm to others."

Jones appeals the renewal of the ERPO.

ANALYSIS

In November 2016, Washington voters passed Initiative No. 1491, known as the Extreme Risk Protection Order Act, now codified at RCW 7.94.010-.900.[3] The purpose of the statute is to "temporarily prevent individuals who are at high risk of harming themselves or others from accessing firearms" by allowing family members or the police to petition a court for an order prohibiting a person from purchasing or possessing any firearm for a one-year period. RCW 7.94.010, .040(2).

RCW 7.94.040(2) provides that "the court shall issue an extreme risk protection order for a period of one year," when, after a hearing, the court finds by a preponderance of the evidence "that the respondent poses a significant danger of causing personal injury to self or others" by having a firearm in his or her custody

---

[3] The Extreme Risk Protection Order Act, ch. 7.94 RCW, was repealed and recodified in January 2021. LAWS OF 2021, ch. 215. The relevant sections of the act remain unchanged.

or control.  Id.  In determining whether grounds for an ERPO exist, the court "may consider any relevant evidence including, but not limited to" the following:

> (a)    A recent act or threat of violence by the respondent against self or others, whether or not such violence or threat of violence involves a firearm;
>
> (b)    A pattern of acts or threats of violence by the respondent within the past twelve months including, but not limited to, acts or threats of violence by the respondent against self or others;
>
> (c)    Any behaviors that present an imminent threat of harm to self or others;
>
> (d)    A violation by the respondent of a protection order or a no-contact order issued under chapter 7.90, 7.92, 10.14, 9A.46, 10.99, 26.50, or 26.52 RCW;
>
> (e)    A previous or existing extreme risk protection order issued against the respondent;
>
> (f)    A violation of a previous or existing extreme risk protection order issued against the respondent;
>
> (g)    A conviction of the respondent for a crime that constitutes domestic violence as defined in RCW 10.99.020;
>
> (h)    A conviction of the respondent under RCW 9A.36.080;
>
> (i)    The respondent's ownership, access to, or intent to possess firearms;
>
> (j)    The unlawful or reckless use, display, or brandishing of a firearm by the respondent;
>
> (k)    The history of use, attempted use, or threatened use of physical force by the respondent against another person, or the respondent's history of stalking another person;
>
> (l)    Any prior arrest of the respondent for a felony offense or violent crime;
>
> (m)    Corroborated evidence of the abuse of controlled substances or alcohol by the respondent; and
>
> (n)    Evidence of recent acquisition of firearms by the respondent.

RCW 7.94.040(3). The court's order must state a basis for the issuance of the order and indicate whether a mental health evaluation is required. RCW 7.94.040(7). If the court issues an ERPO, it "shall order the respondent to surrender to the local law enforcement agency all firearms in the respondent's custody, control, or possession and any concealed pistol licenses issued under RCW 9.41.070." RCW 7.94.090(1).

The statute sets out a procedure for conducting compliance review hearings to verify that a respondent has fully complied with the court's order. RCW 7.94.090(6). Law enforcement may seek a search warrant if there is probable cause to believe a respondent has failed to surrender all firearms as required by the ERPO. RCW 7.94.090(4). It is a gross misdemeanor for a person to possess a firearm with knowledge that he or she is prohibited from doing so by an ERPO. RCW 7.94.120.

The respondent may submit one request to terminate the ERPO during any 12-month period the ERPO is in effect. RCW 7.94.080(1). If the respondent seeks to terminate, he or she has the burden of proving by a preponderance of evidence that he or she does not pose a significant danger of causing personal injury to self or others. RCW 7.94.080(1)(b). The court may consider any relevant evidence, including the considerations listed in RCW 7.94.040(3).

Before the ERPO is due to expire, the court must notify the petitioner of the impending expiration of the order. RCW 7.94.080(2). The petitioner may move to renew the ERPO any time within 105 days of its expiration. RCW 7.94.080(3). Under the renewal provisions,

(b)    In determining whether to renew an extreme risk protection order issued under this section, the court shall consider all relevant evidence presented by the petitioner and follow the same procedure as provided in RCW 7.94.040.

(c)    If the court finds by a preponderance of the evidence that the requirements for issuance of an extreme risk protection order as provided in RCW 7.94.040 continue to be met, the court shall renew the order.  However, if, after notice, the motion for renewal is uncontested and the petitioner seeks no modification of the order, the order may be renewed on the basis of the petitioner's motion or affidavit stating that there has been no material change in relevant circumstances since entry of the order and stating the reason for the requested renewal.

RCW 7.94.080(3)(b), (c).

The appellate standard of review for a court's issuance or renewal of an ERPO is an issue of first impression for this court.  SPD invites us to apply an abuse of discretion standard of review, the same standard we use to review a challenge to a domestic violence protection order (DVPO).  In In re Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010), the Washington Supreme Court, in evaluating a court's refusal to terminate a permanent DVPO, stated that "[w]hether to grant, modify, or terminate a protection order is a matter of judicial discretion" and explained that this discretion is conferred by the express statutory language of the Domestic Violence Prevention Act (DVPA), ch. 26.50 RCW.  The DVPA, the court noted, uses the word "may" in the relevant statutory provisions, thus conferring discretion upon the trial courts.  Id.  It therefore concluded that the decision to terminate a DVPO is discretionary and subject to the abuse of discretion standard of review.  Id.

Unlike the DVPA, RCW 7.94.040(2) provides that a court "shall" issue an ERPO if it "finds by a preponderance of the evidence that the respondent poses a

- 10 -

significant danger of causing personal injury to self or others by having in his or her custody or control, purchasing, possessing, or receiving a firearm." RCW 7.94.080(3)(c) provides that the court "shall" renew the ERPO if it "finds by a preponderance of the evidence that the requirements for issuance of an extreme risk protection order as provided in RCW 7.94.040 continue to be met." The duration of any ERPO must be one year; there is no statutory authorization for a trial court to determine the most appropriate duration of an ERPO. RCW 7.94.040(2).

On the other hand, in determining whether a respondent "poses a significant danger of causing personal injury to self or others" by having a firearm in his or her custody or control, the trial court "may" consider a lengthy set of factors, none of which is dispositive and all of which need not be established, to justify such a finding. RCW 7.94.040(2), (3). This provision does confer discretion on the trial court in weighing the evidence to reach its decision. Similarly, the statute appears to give the court discretion to decide whether a mental health evaluation is appropriate. RCW 7.94.040(7)(d).

But in this appeal, Jones challenges the sufficiency of the evidence supporting the trial court's determination that "the requirements for issuance of an extreme risk protection order as provided in RCW 7.94.040 continue to be met" under RCW 7.94.080(3)(c). When a trial court has weighed the evidence, evaluated the credibility of witnesses, and made factual findings, the "substantial evidence" standard of review applies. In re Dependency of Schermer, 161 Wn.2d 927, 940, 169 P.3d 452 (2007) (where trial court acts as a fact-finder, appellate review is limited to whether substantial evidence supports trial court's findings and

- 11 -

whether findings support conclusions of law). Substantial evidence exists where the record contains a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

1.      Mootness[4]

SPD argues that the ERPO renewal's expiration on March 30, 2021 renders the case moot and it must be dismissed. Although there is no current active ERPO against Jones, we decline to dismiss the appeal on mootness grounds because there remains the possibility that the validity of the ERPO renewal will affect Jones's prosecution for unlawful possession of a firearm.

An appeal is moot when this court can no longer provide effective relief. In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting Orwick v. City of Seattle, 10 Wn.2d 249, 253, 692 P.2d 793 (1984)). Jones was charged with a gross misdemeanor under RCW 7.94.120(2) for violation of the ERPO and the case is pending. The statute imposes a criminal penalty of prohibiting the offender from "having in his or her custody or control, purchasing, possessing, or receiving, or attempting to purchase or receive, a firearm for a period of five years from the date the existing order expires." RCW 7.94.120(2). Our decision on the validity of the order's renewal will therefore likely be determinative of the length of the term of punishment imposed upon Jones under RCW 7.94.120(2), if convicted of a crime. Should we decide that the renewal order was made in error, the five-year period in which Jones is deprived of his right to possess firearms will be

---

[4] This section addresses SPD's July 28, 2021 motion to dismiss the appeal as moot. For the following reasons, we deny the motion.

measured from the expiration of the original order in July 2019, as opposed to the expiration of the renewal in March 2021. For this reason, this court can still provide effective relief should we reverse the trial court's renewal of the order. We will therefore proceed to the merits of Jones's arguments.

2.      Factual Findings

Jones challenges three of the factual findings as unsupported in the record and argues that the remaining findings do not support the trial court's renewal of the ERPO. He contends that substantial evidence does not support the court's finding that (1) he owns a firearm or has access to someone else's firearms, (2) he presents an "imminent threat of harm" to others, or (3) he poses a significant danger of causing personal injury to himself or others by possessing a firearm. While we agree the evidence does not support a finding that he presented an "imminent threat" of harm to himself or others, the remaining findings of fact are supported by substantial evidence and are sufficient to support renewal of the ERPO.

a.      Jones's Continued Access to Firearms

RCW 7.94.040(3)(i) allows the court to consider evidence of a respondent's "ownership, access to, or intent to possess a firearm." Jones challenges the sufficiency of the evidence supporting the trial court's findings that he "has access to someone else's firearms" and he "owns a firearm." We reject this challenge.

There is ample evidence in the record supporting the trial court's finding that Jones has access to firearms, his own or otherwise. Officer Hewitt testified that 11 days after the trial court issued the ERPO and informed Jones that he was to surrender his firearms and concealed carry permit, SPD officers located and

confiscated a total of 5 firearms from his bedroom, his apartment, and his person. In addition to the weapons themselves, the officers found rifle scopes, high capacity magazines, hundreds of rounds of ammunition, and documents indicating Jones's control over the weapons. When the police arrested Jones, he had a gun on his person that had been purchased by his roommate "a couple days after the ERPO was signed." Jones's failure to comply with the ERPO and his enlistment of a roommate to assist him in procuring a firearm support the trial court's finding that Jones continues to have access to firearms and intends to violate a court order to possess firearms.

This finding is further supported by the fact that none of those guns recovered in 2018 were among the five firearms registered to Jones, all of which remain unaccounted for. Although Jones's declaration of non-surrender is some evidence that he no longer has access to those firearms, the trial court was free to deem the declaration not credible. We defer to the fact finder to weigh the evidence and judge witness credibility. State v. Bryant, 89 Wn. App. 857, 869, 950 P.2d 1004 (1998) (citing State v. Hayes, 81 Wn. App. 425, 430, 914 P.2d 788 (1996)). The record thus supports the trial court's finding that Jones remained in possession of the firearms he claimed he had given away or sold to others.

b.    Imminent Threat

Jones also contends the evidence does not support a finding that he presents an imminent threat to himself or others. We agree.

RCW 7.94.040(3)(c) allows a court to consider, when issuing or renewing an ERPO, "[a]ny behaviors that present an imminent threat of harm to self or others." The statute does not define "imminent threat," but it is a concept well

- 14 -

established in our case law. An imminent threat does not mean an immediate threat; it means a threat that is "ready to take place: near at hand: . . . hanging threateningly over one's head: [or] menacingly near." State v. Janes, 121 Wn.2d 220, 241, 850 P.2d 495 (1993).

The record here indicates Jones had several incidents of violent behavior, menacing conduct, and the reckless displaying or brandishing of a firearm in 2017 and 2018. But the record is devoid of any evidence that this behavior continued through 2019 or in 2020, when SPD moved to extend the ERPO. And as Officer Hewitt admitted, when Jones stopped selling hot dogs in Pioneer Square, the incidents "subsided." There was no evidence that Jones was readying to engage in any violent or threatening conduct in September 2020. Thus, the trial court's finding that Jones's behaviors presented "an imminent threat of harm to self or others" is not supported by substantial evidence.

c.     Significant Danger of Causing Personal Injury

While the record does not support the finding that Jones presents an imminent threat of harm, neither RCW 7.94.040(2) nor RCW 7.94.080(3)(c) requires the court to make such a finding before issuing or renewing an ERPO. These statutes require only that the court find by a preponderance of the evidence that Jones continues to pose a significant danger of causing personal injury by having access to firearms. The court made this finding here.

Jones contends the evidence does not support this finding because there is no evidence he engaged in any violent acts in 2019 and 2020. He argues the evidence of his assaultive and threatening behavior is too remote in time to support renewal of the ERPO. We disagree.

First, the unchallenged facts establish that Jones willfully violated a court order and remained in possession of at least five firearms after the court ordered him to surrender any weapons in his custody or control. The evidence supports the court's finding that Jones used his roommate to purchase firearms after the entry of the ERPO as a way of circumventing the restrictions. A reasonable trier of fact could conclude that Jones had no intention, in 2018 or in 2020, to conform his conduct to the law in light of his noncompliance with the ERPO.

Second, RCW 7.94.040(3)(k) permits the court to consider "[t]he history of use, attempted use, or threatened use of physical force by the respondent against another person," without any time limitation attached to that particular factor. The court's unchallenged findings from the July 2018 ERPO establish that Jones had a history of violent, threatening, and impulsive behavior and had brandished firearms when threatening others. When this history is considered in light of Jones's noncompliance with the order to surrender his firearms, his continued possession of firearms, and his actions to circumvent the order by enlisting a roommate to purchase firearms for his use, a reasonable trier of fact could conclude that Jones continued to present a significant danger to others.

Third, the transcripts of the hearings reveal a respondent who was angry, agitated, disruptive of the court proceedings, and disrespectful to the court and the other parties. He interrupted Officer Hewitt, his own attorney, and the court on multiple occasions and, at the September 2020 hearing, had to be admonished that the court would mute his sound if he did not refrain from interrupting the hearing. A reasonable trier of fact could conclude from his statements and conduct during that hearing that he remained impulsive with a lack of behavioral control.

- 16 -

Although two years had passed since the entry of the initial 2018 ERPO, and there was no evidence that Jones presented an "imminent threat to others," Jones's lack of compliance with the ERPO, his possession of firearms immediately after being ordered to surrender them, his use of a roommate to circumvent the ERPO, his history of threatening behavior, his inability to account for the missing firearms, and his demonstrated lack of behavioral control during the hearings sufficiently support the trial court's conclusion that Jones continued to be a significant danger of causing personal injury to others.

We therefore affirm.

_Andrus, A.C.J._

WE CONCUR:

_Chun, J._       _Mann, C.J._