[No. 26148-4-III.   Division Three.   June 12, 2008.]

*In the Matter of the Marriage of* ROBIN M. FREEMAN, *Respondent*, and ROB R. FREEMAN, *Appellant*.

---

*Margaret H. Brost*, for appellant.

*Charles E Szurszewski* (of *Connolly Tacon & Meserve*) and *Patricia S. Novotny*, for respondent.

¶1 Schultheis, C.J. — During dissolution proceedings, Robin Freeman obtained an ex parte order of protection against Rob Freeman that was made permanent upon full hearing in 1998. Rob[1] was in the military and did not return to Washington or contact Robin after their dissolution. In 2006, after Rob was injured in Iraq, he attempted to modify the permanent order, which prevented him from obtaining a security clearance to continue his military career in a less physically demanding role. A court commissioner denied his motion. Revision was also denied. On appeal, Rob contends that the motion to modify the order should have been granted. We conclude that Rob has made the requisite showing and reverse.

¶2 Robin cross-appeals the denial of attorney fees on revision and seeks fees on appeal. Finding no error, we

---

[1] We use the parties' first names in this opinion for clarity.

affirm the decision below and deny her request for fees on appeal.

## FACTS

¶3 As a part of proceedings to dissolve her three-year marriage to Rob, Robin obtained an ex parte temporary order of protection on January 23, 1998, effective until a hearing on February 4, 1998.

¶4 On February 4, after hearing testimony and examining the evidence, a court commissioner made the order permanent. The court found that Robin was in reasonable fear due to two incidents. In the first incident Rob admitted that he physically forced Robin's 16-year-old daughter into her room after she refused to go. She crouched down and he pushed her from the hallway into her room. In the second incident he inventoried or displayed his guns to Robin. Rob's training as a Green Beret and with weapons caused Robin to remain fearful.[2] The order prevented Rob's contact with Robin as well as her four children then aged 18, 16, 12, and 10 years old.

¶5 On May 31, 2006, Rob moved to modify or terminate the order of protection. Rob asserted that he was severely injured on a mission in Iraq where he suffered the loss of a hand, among other injuries. The injuries required retraining and reassessment of his military career goals, for which he needed a security clearance. He is ineligible, however, for such a clearance given the existence of the permanent order of protection. Rob argued that he had no contact with his former wife since the entry of the order, he currently lived in Missouri, he had no violations of any law, and he posed no danger to anyone.

¶6 Robin responded that she was fearful of Rob during her marriage as well as during the separation and divorce,

---

[2] The commissioner expressly declined to resolve Robin's claim that Rob sexually assaulted her when she was unconscious after taking pills in a suicide attempt, which was her main claim to support the permanent order.

and she and her children continue to be fearful of him. She asserted that even after the divorce was final, Rob continued to harass her and violate the order of protection. She pointed to unexplained events that she attributed to Rob, including rattling of the windows, doors, and walls of her house; repositioning of the driver's seat of her car; receiving Rob's mail at her house; reappearance of missing flower vases; and a hole kicked into her bedroom wall. Robin conceded that she had never seen Rob do any of these things. But she stated, "I am terrified of this man. For my safety and the safety of my children, I wish to keep this protection order in place." Clerk's Papers (CP) at 91.

¶7 On August 9, 2006, a court commissioner heard the matter. Yasmeen Abdullah, Robin's daughter, who was 16 years old at the time that the order of protection was entered and 25 at the time of the hearing, testified that after the order was entered in 1998, she saw Rob across the street from her high school and in the student parking lot, watching her. Rob's counsel argued that Rob had lived outside of the state since 1998 and he did not intend to return. Even if Robin proved early violations of the protective order, he argued, there has been no contact for at least six years.

¶8 Finding that Robin is currently in fear of Rob and concluding that the fear is objectively reasonable, the motion to modify or terminate the order was denied. Revision was denied as was Robin's request for attorney fees.

## DISCUSSION

¶9 Robin initially obtained a temporary ex parte domestic violence order of protection pending a full hearing. RCW 26.50.070. After notice and hearing, an order of protection can be made permanent "if . . . the court finds that the respondent is likely to resume acts of domestic violence against the petitioner or the petitioner's family or household members or minor children when the order expires" on other terms. RCW 26.50.060(2). The court here made the finding for a permanent order.

¶10 The court may modify the terms of an order of protection upon application and notice. RCW 26.50.130. The grant of a modification or termination is discretionary. *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 28, 978 P.2d 481 (1999) (the legislature's use of the term "may" in a statute generally confers discretion). We will not disturb such an exercise of discretion on appeal absent a showing of abuse. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Abuse of discretion occurs where the trial court's action is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Id.* "Because the superior court did not revise the commissioner's decision, the commissioner's decision stands as the decision of the superior court that is before us for review." *In re Interest of Mowery*, 141 Wn. App. 263, 274-75, 169 P.3d 835 (2007).

¶11 The modification statute does not specify the grounds upon which a modification should be granted or assign the burden to one party or the other. The provision for *renewal* of an order of protection, however, requires only that the petitioner state the reason for a renewal and the court "shall grant the petition for renewal unless the respondent proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence against the petitioner or the petitioner's children or family or household members when the order expires." RCW 26.50.060(3). Then the court "may renew the protection order for another fixed time period or may enter a permanent order as provided in this section." *Id.* The respondent's burden would logically not be reduced in an action to modify or terminate a permanent order. Thus, at a minimum, the respondent must show that he will more likely than not refrain from resuming acts of domestic violence, i.e., acts of actual physical harm, injury, or assault, or acts to inflict fear of imminent harm, injury, or assault.

¶12 Washington courts have held that no recent or new act of domestic violence need be shown to renew an order of protection or to make one permanent. *Barber v.*

*Barber,* 136 Wn. App. 512, 515-16, 150 P.3d 124 (2007). Rather, a past history of abuse or threatened abuse plus present fear is sufficient to meet the standard. *Spence v. Kaminski,* 103 Wn. App. 325, 332-33, 12 P.3d 1030 (2000). The trial court in this case found that Robin has a current fear of Rob, which, it concluded, was objectively reasonable. We disagree.

¶13 At worst, the past acts in this case involve an assault to the then-16-year-old daughter and a perceived threat of the use of firearms.

¶14 Yasmeen Abdullah, the victim of the assault, is no longer covered by the order. RCW 26.50.020(1) provides protection to a petitioner and "minor family or household members." Ms. Abdullah was named in the order as a minor to whom the order applied. She is no longer a minor and the order does not apply to her, a point the commissioner addressed, though without certainty.[3]

¶15 The other past act involved a perceived threat with firearms. According to Robin, she accused Rob of taking her jewelry from the home, and Rob pulled his rifles out to show her that he did not have the jewelry among his possessions, all the while assuring her that he would not hurt her. At that time, Robin told Rob that she was scared and he said, "fine, fine you're scared." CP at 26. The commissioner scolded Rob for not being sensitive to Robin's fear of weapons and told Rob that he should conduct himself more carefully if he wanted to protect his career and reputation.[4] It was Robin's concern regarding Rob's firearms and military training that inflicted the fear of imminent harm, injury, or assault.

---

[3] The commissioner stated, "I'm not sure this order covers her any longer since she is an adult." CP at 50.

[4] The commissioner warned Rob: "[F]or someone in your situation who has been trained to use force and to use weapons of force you need to be very careful to conduct yourself [,] and your actions in regard to Ms. Freeman have been careless in terms of protecting your own reputation if you felt that that was in danger. I think that's probably all I should say. I will just alert you to the special position you find yourself in because of your training and your career. That means you probably have to conduct yourself a little differently [than] other people who are in a similar situation." CP at 32.

¶16 Rob correctly points out that the authority that addressed "current fear" and a past incident that makes the current fear reasonable also involved facts that would satisfy the requirement of imminence because the opportunity for conflict in those cases continued to exist. *See Spence*, 103 Wn. App. at 332-33 (the parties' continuing relationship while they struggled over custody issues, together with evidence that the petitioner continued to be afraid of the respondent, was sufficient to persuade a rational person that the petitioner was in fear of imminent physical harm); *Barber*, 136 Wn. App. at 513, 515 (evidence of postdivorce abuse and respondent's acts that inflicted current fear of harm); *see also Hecker v. Cortinas*, 110 Wn. App. 865, 870, 43 P.3d 50 (2002) (holding, in case where there were recent acts of pounding on walls, "the [Domestic Violence Prevention Act, chapter 26.50 RCW,] does not require infliction of physical harm; rather, the infliction of 'fear' of physical harm is sufficient").

¶17 It is reasonable that a past act could inflict current fear, but that fear must still relate to a threat of *imminent* harm, injury, or assault. Here, due to time and distance, there is no evidence to support a current fear that physically harmful acts or threats of imminent harm would occur upon lifting the order.

¶18 Rob argues that he has moved on with his life. He has had no contact with Robin or her children since he was deployed to Kentucky in 1998, and he has not returned to the state of Washington since then. Rob points out that he was never charged with violating the protection order and none of the suspicious goings-on could be attributed to him.

¶19 Finally, we address the two incidents in which Yasmeen thought she saw Rob across the street from her school and in the student parking lot in 1998, after the entry of the orders of protection. The order required Rob to be 1,000 feet from the minor children's schools. It is unclear from the record whether Rob actually violated the order; Robin did not attempt to prosecute Rob for a violation. And

Yasmeen presented no testimony that Rob did anything on these occasions to threaten her or attempt to contact her.[5]

¶20  Rob notes the hardship the order visits on his career, which is, though not part of the standard, rather compelling when considering the amount of time that has passed since the entry of the order and considering the current status of the parties.

¶21  Significantly, the commissioner entered a finding of fact that

> [i]t is not appropriate for the mere passage of time without any other showing to lift a person's reasonable fears that they may be a victim of domestic violence by someone who has hurt them in the past.

CP at 55 (Finding of Fact 2.21).

¶22  Rob showed more than the mere passage of time. He showed a compelling need for lifting the order and a lack of opportunity for contact. Further, there is no evidence that Rob had hurt his wife or the other children at any time.

¶23  The commissioner did not consider all of the relevant facts and misapprehended others. Due to these changed circumstances, Robin's current fear is not reasonable. The denial of the motion to terminate or modify the order is based on untenable reasons and grounds.

¶24  On cross-appeal, Robin contends that the superior court abused its discretion for failing to award her attorney fees on revision. She sought them under RCW 26.50.060(1)(g) or (3). We find no error.

¶25  RCW 26.50.060(1)(g) provides that "[u]pon notice and after hearing, the court may" order attorney fees upon the issuance of a protection order. RCW 26.50.060(3) provides that "[t]he court may award court costs, service fees, and reasonable attorneys' fees" upon hearing for renewal. The trial court's decision whether to award attorney fees is plainly discretionary upon the issuance of an

---

[5] Because this allegation was contained in testimony rather than in a pleading, Rob did not have an opportunity to respond as he was not present for the hearing.

order of protection or renewal. But the statute concerning modification or termination of an order does not address attorney fees. *See* RCW 26.50.130.

¶26 Washington follows the American rule—that each party in a civil action will pay its own attorney fees and costs—unless specified by contract, statute, or a recognized ground in equity. *Cosmopolitan Eng'g Group, Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 296-97, 149 P.3d 666 (2006). Our courts decline to award attorney fees under a statute unless there is a clear expression of intent from the legislature authorizing such an award. *Id.* at 303. There are express provisions for attorney fees upon the issuance of an order of protection and upon its renewal. But there is no mention of an award for modifications of such orders. We can, therefore, presume no legislative intent for an award of attorney fees.

¶27 Robin also claims she was entitled to attorney fees for Rob's intransigence. As Rob correctly notes, this argument was raised for the first time on appeal, and it should not be considered. RAP 2.5(a); *King County v. Guardian Cas. & Guar. Co.*, 103 Wash. 509, 175 P. 166 (1918) (question regarding authority for fees should not be considered for the first time on appeal); *Bierce v. Grubbs*, 84 Wn. App. 640, 645, 929 P.2d 1142 (1997) (fee issue could not be raised for first time on appeal); *Draper Mach. Works, Inc. v. Hagberg*, 34 Wn. App. 483, 488, 663 P.2d 141 (1983) (challenge to amount of fees could not be raised for first time on appeal).

¶28 Finally, Robin seeks attorney fees for a frivolous appeal. Under RAP 18.9(a), an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal. *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003). As is evident from this opinion, Rob's appeal was not frivolous. Further, as stated above, there is no statutory basis for attorney fees.

## CONCLUSION

¶29  We reverse the denial of the termination of the order of protection and remand for the entry of an order consistent with this opinion. We affirm the trial court's decision on attorney fees and deny the request for attorney fees on appeal.

BROWN, J., and THOMPSON, J. PRO TEM., concur.

Review granted at 165 Wn.2d 1040 (2009).