**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| JAMIE ANN SULLIVAN, | No. 57794-1-II |
| Respondent, | |
| v. | |
| CORY DANIEL SCHUYLER, | ORDER GRANTING MOTION TO PUBLISH AND PUBLISHING OPINION |
| Appellant. | |

Respondent, Jamie A. Sullivan, filed a motion to publish this court's opinion filed on July 2, 2024. The appellant did not file a response. After consideration, the court grants the motion. It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

**ORDERED** that the opinion will now be published.

**FOR THE COURT**

**PANEL**: Jj. Maxa, Lee, Veljacic

_____
LEE, JUDGE

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JAMIE ANN SULLIVAN, | No.  57794-1-II |
| Respondent, | |
| v. | |
| CORY DANIEL SCHUYLER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Cory D. Schuyler appeals the order denying his motion to terminate a domestic violence protection order (DVPO) protecting his former girlfriend, J.A.S.  Schuyler argues the DVPO was entered in violation of his due process rights, that it was an abuse of discretion to deny his motion to terminate the DVPO, and that the statute governing termination of a DVPO, RCW 7.105.500(6), is unconstitutionally vague.

We hold Schuyler's due process challenge is untimely.  Furthermore, because the superior court did not abuse its discretion in denying Schuyler's motion to  revise the commissioner's denial of Schuyler's motion to terminate the DVPO and because the void-for-vagueness doctrine does not apply to RCW 7.105.500(6), we affirm.

## FACTS

Schuyler and J.A.S. met in 2015, dated for several months, and broke up in August 2016.  After the couple broke up, Schuyler stalked and harassed J.A.S. by repeatedly calling and messaging her, using GPS to track her movements, and impersonating people to keep tabs on her life.  Police arrested Schuyler in February 2017 for stalking J.A.S., and again in March 2017 after

Schuyler violated a pre-trial no contact order protecting J.A.S. that was entered following Schuyler's February arrest.

The State charged Schuyler with two counts of misdemeanor stalking and two counts of violating a pretrial no contact order. Schuyler pleaded guilty to all four counts and was sentenced to 364 days of confinement.

In September 2017, J.A.S. filed a petition for order for protection seeking to restrain Schuyler from stalking, harassing, or otherwise contacting J.A.S. or her minor daughter. A temporary protection order was entered on September 29, and a hearing on a longer-term protection order was set for October 11. On October 2, the Thurston County Sheriff's Office filed a return of service form indicating that Schuyler had been personally served with notice of the October 11 hearing.

Following the October 11 hearing, a superior court commissioner entered a DVPO with an expiration date of 2099. Schuyler did not attend the hearing. After the hearing, Schuyler wrote a letter to the commissioner who entered the DVPO, explaining, "I was expecting to appear [at the hearing] and thought the deputies were going to take me to court but for some unknown reason I was not taken to court." Clerk's Papers (CP) at 37. Schuyler also wrote that he did "not object to the order of protection." CP at 37. It does not appear that the commissioner took any action in response to Schuyler's letter.

On July 19, 2022, Schuyler moved to terminate the DVPO,[1] arguing that there had been a substantial change of circumstances justifying termination of the DVPO.[2]  In a declaration attached to his motion, Schuyler explained that he had moved from Washington to Tennessee and was enrolled in a local university.  Schuyler supported his motion with records of his participation in a court-ordered domestic violence treatment program and therapy sessions, a letter from his therapist, and a Washington State Patrol Criminal history search.  Later, Schuyler filed an amended list of exhibits and attachments, including a copy of his judgment and sentence from his 2017 convictions, a declaration from his ex-wife, his military discharge forms, and his acceptance letter from the University of Tennessee, Knoxville.

J.A.S. objected to Schuyler's motion to terminate, arguing that Schuyler had not demonstrated "'a substantial change in circumstances,'" and that even if he had, Schuyler's actions "'were of such severity that the order should not be terminated.'"  CP at 115, 119 (quoting RCW 7.105.500(3), (6)).  In support of her objection, J.A.S. included the declarations of probable cause from Schuyler's 2017 arrests, the charging information from Schuyler's 2017 convictions, the

---

[1]  Schuyler moved to terminate under former RCW 26.50.130 (2019).  However, that statute had already been repealed, and the new version of the statute, RCW 7.105.500, took effect on July 1, 2022.  LAWS 2021, ch. 215, §§ 61, 170.  RCW 7.105.500(3) states, "[T]he court may not . . . terminate an existing protection order unless the respondent proves by a preponderance of the evidence that there has been a substantial change in circumstances such that the respondent will not resume, engage in, or attempt to engage in" certain acts against the protected party.

Former RCW 26.50.130 (2011) was in effect when the DPVO was entered.  Former RCW 26.50.130 was amended in 2019 before it was repealed in 2021.

[2]  Schuyler actually filed three motions to terminate the DVPO, each making a substantially similar legal argument, but with additional evidence attached to each.  This opinion refers to the motions collectively as the motion to terminate.

transcript of a ruling on Schuyler's own petition for a protection order, and declarations from Schuyler's ex-wife. J.A.S. also requested an award of attorney fees and costs pursuant to RCW 7.105.310(1)(j) and .500(9).

A superior court commissioner held a hearing on the motion to terminate on October 12.

A. EVIDENCE SUBMITTED TO SUPPORT A SUBSTANTIAL CHANGE IN CIRCUMSTANCES

At the hearing on Schuyler's motion to terminate the DVPO, Schuyler admitted that his actions towards J.A.S. were a "huge mistake," but that he had since "rebuil[t] [his] life." Verbatim Rep. of Proc. (VRP) (Oct. 12, 2022) at 10, 12. Schuyler apologized to J.A.S. for his actions and argued that the DVPO was no longer necessary in light of his move to Tennessee, his participation in a domestic violence treatment program and therapy, his newly positive relationship with his ex-wife and children, and his lack of encounters with the law following his sentence. Schuyler also asked the superior court commissioner to consider his lack of substance abuse and military career in deciding his motion. Finally, Schuyler stated he had no intention of contacting J.A.S. or "anyone associated with her" ever again. VRP (Oct. 12, 2022) at 12.

B. EVIDENCE SUPPORTING J.A.S.'S OBJECTION TO SCHUYLER'S MOTION TO TERMINATE

In response, J.A.S. argued that Schuyler had not shown a substantial change in circumstances justifying a termination of the DVPO. J.A.S.'s counsel urged the superior court commissioner to not consider evidence of Schuyler's court-ordered and therapeutic treatment because the former "was done under compulsory process," and records of the latter were never properly authenticated. VRP (Oct. 12, 2022) at 13.

In addition to challenging Schuyler's alleged substantial change in circumstances, J.A.S. argued that even if the superior court commissioner found such a change, the DVPO should remain

in place due to the severity of Schuyler's actions towards her. In a declaration, J.A.S. asserted that Schuyler harassed her with "unwanted visits, phone calls, gifts," and entering J.A.S.'s home while she was not there. CP at 110. Schuyler tracked J.A.S.'s movements by attaching a GPS tracking device to her car, impersonated others to "gain information about" her, and contacted J.A.S. in defiance of a military restraining order and commands from his military superiors. CP at 110. Schuyler also disguised himself to follow J.A.S. without being detected. J.A.S. was not Schuyler's sole target—Schuyler also stalked and harassed J.A.S.'s new boyfriend, R.K., using many of the same technologies and methods he used on J.A.S. J.A.S. attributed Schuyler's ability to stalk and harass her to Schuyler's "considerable military training and equipment." CP at 111.

The first declaration of probable cause (which supported Schuyler's February 2017 arrest) attached to J.A.S.'s objection to Schuyler's motion to terminate the DVPO provided further details regarding the severity of Schuyler's actions. After she found a GPS tracker on her car, J.A.S. confronted Schuyler about it. Schuyler admitted he placed GPS trackers on J.A.S. and R.K.'s cars and had sent both of them anonymous text messages. After confronting Schuyler, J.A.S. showed the police text messages from several different numbers that detailed J.A.S. and R.K.'s movements, down to the time and place. R.K. told police he received messages from Schuyler suggesting R.K. was cheating on J.A.S. and threatening to expose the alleged infidelity.

The second declaration of probable cause, supporting Schuyler's March 2017 arrest, documented how Schuyler continued to harass J.A.S. and R.K. beyond his initial arrest. Following his February arrest, Schuyler was released on bail and ordered to not contact or harass J.A.S. or R.K. However, following Schuyler's release, J.A.S. and R.K. received multiple text messages they suspected were from Schuyler. While Schuyler initially had an alibi for the time the first

message was sent, a subsequent investigation revealed that some of the messages came from online services allowing subscribers to program text messages to be sent at a specific date and time. Police were able to connect Schuyler to the messages and the services used to send them.

To further emphasize the severity of Schuyler's actions, J.A.S. argued that Schuyler's "abusive, controlling conduct" towards his ex-wife belied his argument that his actions towards J.A.S. were a "one-time mistake." CP at 119; VRP (Oct. 12, 2022) at 12. In her declaration, Schuyler's ex-wife stated that Schuyler was very controlling of her, attempting to isolate her, and demeaning her in public. Schuyler attempted to keep his children from his ex-wife, keeping them all "under . . . near[] constant surveillance." CP at 138.

J.A.S. also supported her objection with evidence of Schuyler's own attempt to get a DVPO against J.A.S. In a separate declaration, J.A.S. stated that in August 2018, Schuyler "attempted to file a retaliatory domestic violence" protection order against J.A.S. CP at 111. Schuyler's petition was denied. The superior court commissioner who denied Schuyler's petition stated that the petition should have been denied "outright" because it was "just an extension of the pattern of behavior that caused the parties to get into this situation in the first place." CP at 133.

C.    SUPERIOR COURT COMMISSIONER'S RULING AND SUBSEQUENT MOTION TO REVISE

After hearing arguments on the motion to terminate the DVPO, the superior court commissioner denied Schuyler's motion to terminate.[3] The commissioner found that while Schuyler presented evidence of a substantial change in circumstances, "the issuance of the

---

[3] The superior court commissioner also denied J.A.S.'s motion to restrict abusive litigation. J.A.S. did not appeal the denial of that motion.

protection order was based on harmful acts that were of such a severity that the order should not be terminated." VRP (Oct. 12, 2022) at 20. The commissioner explained:

> [T]his stalking, monitoring, harassing behavior . . . was ongoing; it was severe; it was ongoing even beyond the protection order initially being put in place, which is very concerning. And there is evidence that it was ongoing for multiple relationships.
> This is the type of behavior that can occur across state lines. There's no boundary on stalking behavior. And [J.A.S.] legitimately does not feel safe without a protection order in place.

VRP (Oct. 12, 2022) at 21. In the written order, the commissioner wrote, "[T]he domestic violence is of such severity that the order should not be terminated." CP at 259.

The superior court commissioner also granted J.A.S.'s request for attorney fees and costs. While Schuyler had argued that he was indigent and unsure how he would pay J.A.S.'s attorney fees, the commissioner found that it was inappropriate "to delay the proceedings to hear about" Schuyler's finances. VRP (Oct. 12, 2022) at 26. The commissioner also initially asked J.A.S.'s attorney for itemized billing statements, but subsequently found that the requested fees "were earned and reasonable." VRP (Oct. 12, 2022) at 25. The commissioner's written order awarded J.A.S. $9,617.99 in attorney fees and costs.

On October 21, 2022, Schuyler filed a motion to revise the superior court commissioner's denial of the motion to terminate the DVPO and the award of attorney fees and costs. After hearing arguments from Schuyler, the superior court denied Schuyler's motion to revise, adopting the commissioner's reasoning that, despite a substantial change in circumstances, Schuyler's actions towards J.A.S. were too severe to terminate the DVPO. In its written order, the superior court wrote that Schuyler's "domestic violence is of such severity that the order should not be

7

terminated." CP at 350. The superior court also affirmed the commissioner's award of attorney fees and costs to J.A.S.

Schuyler appeals.

ANALYSIS

Schuyler appeals on several grounds. Specifically, Schuyler argues that his due process rights were violated by the imposition of a DVPO, it was an abuse of discretion to not terminate the DVPO, and the statute pursuant to which his motion to terminate was denied is unconstitutionally vague.

A.      SCHUYLER'S DUE PROCESS CHALLENGE TO THE DVPO IS UNTIMELY

Schuyler argues he was denied due process because he was not present for the October 11, 2017 hearing when the DVPO was entered, and therefore, "[t]he trial court erred when it relied on the [protection] order signed by the original commissioner." Br. of Appellant at 16.[4] We disagree.

RCW 2.24.050 states, "All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court." After an order or judgment is entered, interested parties have 10 days to seek revision of a commissioner's ruling. RCW 2.24.050. If a party fails to seek revision of a commissioner's ruling within 10 days, the commissioner's "orders and judgments shall be and become the orders and judgments of the superior court." RCW 2.24.050. Thereafter, "appellate review . . . may be sought in the same fashion as review of like orders and judgments entered by the judge." RCW 2.24.050; *see also In re Marriage of Robertson*, 113 Wn. App. 711, 714, 54 P.3d 708 (2002) ("[RCW 2.24.050 allows] only 10 days from the date of the

---

[4] The Brief of the Appellant does not contain page numbers. For the purpose of our opinion, we number the Brief of the Appellant 1-19, starting from the first page of the brief.

commissioner's order to move for revision. The statute also . . . provides that a party who fails to act within the 10 days must seek relief from the appellate court.").

Under RAP 5.2(a)(1), parties seeking appellate review of a trial court's decision have "30 days after the entry of the decision" to file a notice of appeal. *See also In re J.R.H.*, 83 Wn. App. 613, 616, 922 P.2d 206 (1996) ("By failing to file a notice of appeal within 30 days of entry of either . . . order[], [appellant] waived his right to challenge the provisions to which he now objects."), *and Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367, 849 P.2d 1225 (1993) ("A party is allowed 30 days in which to file a notice of appeal.").

Here, the DVPO was entered on October 11, 2017. Therefore, Schuyler had 10 days to file a motion to revise the DVPO (by October 23, 2017), but he did not do so.[5] Alternatively, Schuyler had 30 days to appeal the DVPO (by November 10, 2017), but he did not do so. Therefore, because Schuyler failed to challenge the DVPO within any prescribed time limit, we do not consider his due process argument.

B.       DENYING SCHUYLER'S MOTION TO TERMINATE WAS NOT AN ABUSE OF DISCRETION

Schuyler argues that the superior court abused its discretion when it denied his motion to terminate the DVPO.[6] We disagree.

---

[5]  In fact, in his letter to the superior court commissioner who entered the DVPO, Schuyler wrote, "I do not object to the order of protection." CP at 37.

[6]  A court commissioner's decision is "subject to revision by the superior court," but when a party unsuccessfully seeks revision of a commissioner's order, the commissioner's "findings and orders . . . become the orders and findings of the superior court." RCW 2.24.050; *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). Subsequently, "the commissioner's decision stands as the decision of the superior court that is before [this court] for review." *In re Interest of Mowery*, 141 Wn. App. 263, 274-75, 169 P.3d 835 (2007).

1. Legal Principles

RCW 7.105.500(1) allows a court to terminate a protection order under certain circumstances. Specifically, the restrained party must show, by a preponderance of the evidence, "that there has been a substantial change in circumstances such that the respondent will not resume, engage in, or attempt to engage in," a statutorily proscribed action, including "[a]cts of domestic violence" and "[a]cts of stalking." RCW 7.105.500(3)(a), (c). The statute outlines several "unweighted factors" a court should consider "[i]n determining whether there has been a substantial change in circumstances." RCW 7.105.500(4). Those factors are:

> (a) Whether the respondent has committed or threatened sexual assault, domestic violence, stalking, or other harmful acts against the petitioner or any other person since the protection order was entered;
> (b) Whether the respondent has violated the terms of the protection order and the time that has passed since the entry of the order;
> (c) Whether the respondent has exhibited suicidal ideation or attempts since the protection order was entered;
> (d) Whether the respondent has been convicted of criminal activity since the protection order was entered;
> (e) Whether the respondent has either acknowledged responsibility for acts of sexual assault, domestic violence, stalking, or behavior that resulted in the entry of the protection order, or successfully completed state-certified perpetrator treatment or counseling since the protection order was entered;

---

Here, Schuyler appeals both the superior court commissioner's denial of his motion to terminate the DVPO and the superior court's subsequent denial of Schuyler's motion to revise the commissioner's ruling. On revision, the superior court noted that "the commissioner . . . properly denied the request to terminate or modify the protection order" because despite a showing of substantial change in circumstances, Schuyler's actions were too severe to justify terminating the DVPO. VRP (Nov. 16, 2022) at 16. Because the superior court did not revise the commissioner's denial of Schuyler's motion to terminate, "the commissioner's decision stands as the decision of the superior court that is before [this court] for review." *Mowery*, 141 Wn. App. at 274-75; *see also In re Marriage of Freeman*, 169 Wn.2d 664, 670-71, 239 P.3d 557 (2010) (noting that where court commissioner denied motion to terminate protection order and superior court denied motion to revise, "[w]e must decide whether the commissioner abused her discretion when refusing to terminate the permanent protection order.").

        (f) Whether the respondent has a continuing involvement with drug or alcohol abuse, if such abuse was a factor in the protection order;

        (g) Whether the petitioner consents to terminating the protection order, provided that consent is given voluntarily and knowingly; or

        (h) Other factors relating to a substantial change in circumstances.

RCW 7.105.500(4)(a)-(h).

Even where a respondent shows "a substantial change in circumstances," the trial court may deny respondent's motion to terminate "if it finds that the acts . . . that resulted in the issuance of the protection order were of such severity that the order should not be terminated." RCW 7.105.500(6).

We review a challenge to a trial court's order regarding termination of a permanent protection order for an abuse of discretion. *Fowler v. Fowler*, 8 Wn. App. 2d 225, 234, 439 P.3d 701 (2019). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons." *Id*. "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583 (2010) (quoting *In re Det. of Duncan*, 167 Wn.2d 398, 403, 219 P.3d 666 (2009)).

        2.      Ruling Denying the Motion to Terminate the DVPO Not an Abuse of Discretion

Schuyler argues that "due to time and distance, no evidence supports" the denial of his motion to terminate. Br. of Appellant at 13 (citing *In re Marriage of Freeman*, 146 Wn. App. 250, 257, 192 P.3d 369 (2008), *aff'd*, 169 Wn.2d 664, 239 P.3d 557 (2010)). We disagree.

Here, substantial evidence supported the conclusion that Schuyler's behavior was severe enough to justify denying his motion to terminate the DVPO. For example, there was evidence that Schuyler's conduct was ongoing and extended, as demonstrated by Schuyler's repeated calls

and multiple messages left for J.A.S., multiple arrests for violating pre-trial protection orders, continued harassment of J.A.S. after his February 2017 arrest, and his attempt to get a DVPO against J.A.S. following his release from jail. There was also evidence of Schuyler's gross invasions of J.A.S.'s privacy, as demonstrated by Schuyler entering J.A.S.'s home while she was away, using a GPS tracker to track J.A.S. and R.K., sending J.A.S. anonymous messages documenting J.A.S.'s and R.K.'s location and movements, impersonating people known to J.A.S. to gain information about J.A.S., and interfering in J.A.S.'s new relationship by sending messages to R.K. threatening to tell J.A.S. that R.K. was cheating on her. Finally, there was evidence that Schuyler used electronics and the internet to stalk J.A.S., showing that there was "no boundary [to Schuyler's] stalking behavior," even considering his move from Washington to Tennessee. VRP (Oct. 12, 2022) at 21. Accordingly, the court's ruling that Schuyler's actions were too severe to justify terminating the DVPO was supported by the evidence and, thus, was not an abuse of discretion.

3.      No Misapplication of the Law.

Schuyler makes four arguments alleging a misapplication of the law by the superior court and its commissioner. First, he argues that the court erred by considering Schuyler's "past relationships." Br. of Appellant at 12. Second, he argues that the court erred because "the law does not intend [DVPOs] to last indefinitely without a showing of need." Br. of Appellant at 11. Third, he argues that the court erred by denying his motion to terminate without making a finding that J.A.S. had a reasonable, current fear of imminent harm. Finally, Schuyler argues that the court erred by interpreting the term "'of such severity'" contrary to the legislature's intent. Br. of Appellant at 14. We disagree.

The superior court did not abuse its discretion by considering evidence of Schuyler's past relationships because nothing prohibits a court from doing so. Schuyler cites to former RCW 26.50.130(3)(b), which directs a court hearing a motion to terminate a protection order to consider "only factors which address whether the respondent is likely to commit future acts of domestic violence against the petitioner." Schuyler asserts that this directive precluded the court from considering past relationships. Br. of Appellant at 9, 12. However, as Schuyler admits, "the current RCW 7.105.500 omits the words, 'only factors which address whether. . .'" Br. of Appellant at 12; *see also* RCW 7.105.500(3), (4).

RCW 7.105.500(6) does not enumerate factors a court should consider in assessing the severity of the restrained party's conduct, nor does it prohibit consideration of the restrained party's actions in prior relationships. Thus, there is no support for Schuyler's argument that the court was precluded from considering Schuyler's treatment of his ex-wife in assessing the severity of Schuyler's actions towards J.A.S.[7]

Also, the court denied the motion to terminate the DVPO because it found "that the acts of domestic violence . . . and other harmful acts that resulted in the issuance of the protection order were of such severity that the order should not be terminated." RCW 7.105.500(6). Therefore, even if evidence of Schuyler's relationship with his ex-wife were not considered, as discussed above, there remained substantial evidence of Schuyler's severe and harmful conduct towards J.A.S. *See State v. Gower*, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014) (explaining that

---

[7] Generally, evidentiary rules that may preclude such evidence do not apply in this context. ER 1101(c)(4) states, "The rules [of evidence] (other than with respect to privileges, the rape shield statute and ER 412) need not be applied in the following situations: . . . (4) *Applications for Protection Orders*. Protection order proceedings under Chapters 7.105 and 74.34 RCW."

nonconstitutional error requires reversal only where there is a reasonable probability that "'the outcome of the [proceeding] would have been materially affected'" absent the error (internal quotation marks omitted) (quoting *State v. Gresham*, 173 Wn.2d 405, 425, 269 P.3d 207 (2012))).

Schuyler also argues that the court abused its discretion because "the law does not intend [DVPOs] to last indefinitely without a showing of need."[8] Br. of Appellant at 11. Schuyler cites only *In re Marriage of Littlefield*, 133 Wn.2d 39, 940 P.2d 1362 (1997), in support of this argument, claiming that in that case, our Supreme Court "recognized that DVPOs are not meant to be permanent." Br. of Appellant at 11. Schuyler is mistaken—there was no DVPO or other protection order at issue in *Littlefield*. Rather, the court in *Littlefield* addressed challenges to a parenting plan. 133 Wn.2d at 46. Accordingly, Schuyler's authority is unpersuasive.

Moreover, our Supreme Court has acknowledged that "[t]he legislature has authorized courts to make protection orders permanent in some circumstances." *Freeman*, 169 Wn.2d at 672. And both the former and current versions of the Civil Protection Orders statute authorize a court to impose a permanent order of protection. *Compare* former RCW 26.50.060(2) (2010) ("[I]f . . . the court finds that the respondent is likely to resume acts of domestic violence against the petitioner . . . when the order expires, the court may either grant relief for a fixed period or enter a permanent order of protection.") *with* RCW 7.105.315(1) ("When issuing an order after notice to the respondent and a hearing, the court may either grant relief for a fixed period of time or enter a

---

[8] Schuyler's argument could also be read as challenging the DVPO's original expiration date of 2099. To the extent Schuyler argues as such, he has waived that challenge for the same reasons he waived his due process challenge: he did not move to revise the DVPO or appeal it within the prescribed deadlines. Furthermore, Schuyler did not move to modify the DVPO based on its duration, but to terminate it entirely.

permanent order of protection."). Also, the court found a need to leave the permanent DVPO in place, as evidenced by the finding that Schuyler's actions were too severe to justify terminating the DVPO. Thus, the court did not abuse its discretion by leaving in place a permanent DVPO.

Next, Schuyler argues that the court applied the incorrect legal standard because it failed to make a finding that J.A.S. had a reasonable, current fear of imminent harm. Specifically, he argues that "due to time and distance, no evidence supports a current fear that physically harmful acts or threats of imminent harm would occur upon lifting the order." Br. of Appellant at 13. Schuyler's argument is misplaced: he focuses on the statutory provision regarding whether there has been a substantial change in circumstances and the provision defining "domestic violence," and fails to address RCW 7.105.500(6), the provision allowing a court to uphold a DVPO *despite* a finding of substantial change in circumstances because of the severity of Schuyler's actions. Thus, although the superior court found there was a substantial change in circumstances, it did not decline to terminate the DVPO based on a substantial change in circumstances but on the severity of Schuyler's actions.

Schuyler is correct that our Supreme Court previously held that "[w]hile [the restrained party] bears the burden of proving by a preponderance of the evidence that he will not commit future acts of domestic violence, the facts must also support a finding that [the protected party's] current fear of imminent harm is reasonable." *Freeman*, 169 Wn.2d at 674. However, our legislature subsequently amended the statute at issue, former RCW 26.50.130, in response to *Freeman*, finding that "some of the factors articulated in . . . *Freeman* . . . for terminating . . . [DVPOs] do not demonstrate that a restrained person is unlikely to resume acts of domestic violence when the order expires, and places an improper burden on the person protected by the

order." LAWS OF 2011, ch. 137 § 1. The legislature also added the following provision: "In a motion by the respondent for termination of an order for protection . . . the petitioner bears no burden of proving that he or she has a current reasonable fear of imminent harm by the respondent." LAWS OF 2011, ch. 137 § 2. That provision was included in the statute's recodification. *See* RCW 7.105.500(3) ("The petitioner bears no burden of proving that he or she has a current reasonable fear of harm by the respondent."). Accordingly, the court applied the correct legal standard in addressing both the substantial change in circumstances and the severity of Schuyler's actions, and the court did not abuse its discretion by denying Schuyler's motion to terminate the DVPO.

Finally, Schuyler argues that the legislature's failure to define the term "severity" means the term should be read to refer only to serious violent offenses and physical harm, and that because his conduct only rose to the level of a gross misdemeanor, the court misapplied the law by finding his actions severe enough to deny his motion to terminate. We disagree.

"This court's fundamental objective in determining what a statute means is to ascertain and carry out the legislature's intent. If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the legislature intended." *Durant v. State Farm Mut. Auto. Ins. Co.*, 191 Wn.2d 1, 8, 419 P.3d 400 (2018) (citation omitted). "A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable." *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001), *cert. denied*, 534 U.S. 1130 (2002).

A plain language reading of RCW 7.105.500(6) demonstrates that Schuyler's definition of "severity" is incompatible with the legislature's intent. The statute does not define the terms "severity" or "severe." "'When a statutory term is undefined, the words of a statute are given their

ordinary meaning, and the court may look to a dictionary for such meaning.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 528, 243 P.3d 1283 (2010) (quoting *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131, *cert. denied*, 562 U.S. 928 (2010)).

"Severity" means the "quality or state of being severe." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2081 (2002). "Severe" means, among other things, "inflicting physical discomfort or hardship," "inflicting pain or distress," "requiring great effort," and "of a great degree or an undesirable or harmful extent." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 2081. Based on these definitions, there is no support for Schuyler's assertion that the legislature intended to restrict the meaning of "severity" to serious violent offenses, or to otherwise exclude actions constituting gross misdemeanors from that meaning. In fact, the plain meaning of the word "severity" encompasses both physical and nonphysical actions, as well as Schuyler's actions: his actions seriously distressed J.A.S. and required great effort. Accordingly, based on RCW 7.105.500(6)'s plain meaning, the court did not abuse its discretion by finding Schuyler's conduct severe enough to deny his motion to terminate the DVPO.

C.    RCW 7.105.500(6) IS NOT UNCONSTITUTIONALLY VAGUE

Schuyler also argues that RCW 7.105.500(6) is unconstitutionally vague because the statute does not define the phrase "'of such severity.'" Br. of Appellant at 14. We disagree.

"The law demands that the legislature describe a crime in specific, not vague, language, so that citizens and law enforcement may comprehend the variety of human conduct that the legislature intends to proscribe, prevent, and punish." *State v. DeVore*, 2 Wn. App. 2d 651, 660, 413 P.3d 58, *review denied*, 191 Wn.2d 1005 (2018). Our Supreme Court has explained that, to satisfy due process, "statutes must be specific enough that citizens have fair notice of what conduct

is prescribed," and they "must provide ascertainable standards of guilt to protect against arbitrary arrest and prosecution." *State v. Baldwin*, 150 Wn.2d 448, 458, 78 P.3d 1005 (2003). "Both prongs of the vagueness doctrine focus on laws that prohibit or require conduct." *Id.*

In *Baldwin*, our Supreme Court held that the vagueness doctrine did not apply to our state's sentencing guideline statutes because those statutes "do not define conduct nor do they allow for arbitrary arrest and criminal prosecution by the State." *Id.* at 459. In other words, the doctrine did not apply because the statutes neither "inform the public of the penalties attached to criminal conduct nor do they vary the statutory maximum and minimum penalties assigned to illegal conduct by the legislature." *Id.* The court also noted, "The guidelines are intended only to structure discretionary decisions affecting sentences; they do not specify that a particular sentence must be imposed. Since nothing in these guidelines statutes requires a certain outcome, the statutes create no constitutionally protectable liberty interest." *Id.* at 461.

Here, Schuyler argues RCW 7.105.500(6) is unconstitutionally vague because the statute fails to define "what is severe and what is not." Br. of Appellant at 14. But the void-for-vagueness doctrine does not apply to RCW 7.105.500(6). RCW 7.105.500(6) does not define conduct, nor does it empower the state to arrest or prosecute parties restrained by a DVPO; rather, RCW 7.105.500(6) only allows a court to modify or terminate "an *existing* order." RCW 7.105.500(1) (emphasis added); *see also Baldwin*, 150 Wn.2d at 459 (stating that Washington's sentencing guidelines were not susceptible to a vagueness challenge because they "do not define conduct nor do they allow for arbitrary arrest and criminal prosecution by the State"). RCW 7.105.500(6) does not inform the public what conduct might lead to the imposition of a protection order nor explain

how a restrained party might otherwise be penalized for said conduct.[9]  In fact, RCW 7.105.500(6) does not proscribe conduct at all—the only portion of the Civil Protection Order statute that proscribes conduct is the portion criminalizing violations of protection orders.  RCW 7.105.450-.470.  Schuyler does not challenge those portions of the statute.  Accordingly, any citizen reading the DVPO modification and termination statute "will not be forced to guess at the potential consequences that might befall one who engages in prohibited conduct" because the existence of a DVPO presumably means the restrained party is aware of the actions that led to the DVPO's imposition in the first place.  *See Baldwin*, 150 Wn.2d at 459.

Finally, RCW 7.105.500(6) is discretionary, allowing, but not requiring, a court to deny a motion to terminate a DVPO if the underlying conduct is sufficiently severe.  Because RCW 7.105.500(6) only "structure[s] discretionary decisions affecting" the longevity or terms of a DVPO and does not "require[] a certain outcome," the statute does not create the sort of liberty interest whose deprivation the void-for-vagueness doctrine is intended to protect.  *See Baldwin*, 150 Wn.2d at 461.  Therefore, Schuyler's void-for-vagueness challenge fails.[10]

---

[9]  Other portions of the statute—such as RCW 7.105.010, which defines the types of abuse civil protection orders are meant to prevent—define conduct.

[10]  We note that even if the doctrine did apply, RCW 7.105.500(6) is not vague.  "A statute's language is sufficiently clear when it provides explicit standards for those who apply them and provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *State v. Evergreen Freedom Found.*, 192 Wn.2d 782, 797, 432 P.3d 805 (2019).  RCW 7.105.500(6) satisfies both requirements.  First, when read in its entirety, the Civil Protection Orders statute clearly defines the kinds of acts that could result in a protection order.  RCW 7.105.010 (definitions).  Second, the modification and termination statute grants courts discretion to decline to terminate or modify a protection order if the restrained party's conduct is severe enough—an explicit standard.  RCW 7.105.500(6).

D.    ATTORNEY FEES

Schuyler argues that the superior court abused its discretion in awarding J.A.S. attorney fees. J.A.S. argues that the superior did not err in awarding attorney fees below and requests an award of attorney fees on appeal pursuant to RCW 7.105.500(9) and RAP 18.1. We affirm the superior court's award of attorney fees and award J.A.S. attorney fees on appeal.

1.    No Abuse of Discretion to Award J.A.S. Attorney Fees

"A court may require the respondent to pay the petitioner for costs incurred in responding to a motion to modify or terminate a protection order, including reasonable attorneys' fees." RCW 7.105.500(9). We review a grant of attorney fees for an abuse of discretion. *Freeman*, 169 Wn.2d at 676.

Schuyler argues the court had no authority to order him to pay J.A.S. attorney fees pursuant to *Freeman*. In *Freeman*, our Supreme Court held that "[b]y omitting a grant of attorney fees from the modification statute, the legislature intended that each party shoulder reasonable attorney fees . . . for modification of permanent protection orders." 169 Wn.2d at 677. But *Freeman* addressed former RCW 26.50.130, which did not govern the superior court's decision here. The former Domestic Violence Protection Act was repealed by LAWS 2021, ch. 215, § 170, effective July 1, 2022. The recodified version of the applicable statute, RCW 7.105.500(9), which does authorize attorney fees, was in effect when Schuyler moved to terminate the protection order on July 19, 2022. LAWS 2021, ch. 215, § 61. Therefore, the superior court was authorized to award J.A.S. attorney fees incurred in responding to Schuyler's motion to terminate the DVPO and did not abuse its discretion in doing so.

Schuyler also argues that the superior erred by imposing attorney fees without considering his financial circumstances or requiring itemized billing statements from J.A.S.'s attorney. However, nothing in RCW 7.105.500(9) requires a court to consider either party's ability to pay before awarding attorney fees, and Schuyler cites no authority to the contrary. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Schuyler also fails to cite any authority requiring J.A.S.'s counsel to provide any itemized billing statements, especially when the billing statements provided allowed the superior court to determine that the requested attorney fees "were earned and reasonable." VRP (Oct. 12, 2022) at 25; *See also DeHeer*, 60 Wn.2d at 126 ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Thus, the superior court did not err by failing to consider Schuyler's ability to pay or requiring further itemized billing, and we affirm the superior court's award of attorney fees to J.A.S.

2.      Attorney Fees on Appeal

J.A.S. requests attorney fees on appeal under RCW 7.105.500(9) and RAP 18.1. We hold that J.A.S. is entitled to attorney fees on appeal.

"In Washington, a prevailing party may recover attorney fees authorized by statute, equitable principles, or agreement between the parties. If such fees are allowable at trial, the prevailing party may recover fees on appeal as well." *Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001) (internal citations omitted), *review denied*, 146 Wn.2d 1008 (2002); RAP

21

18.1(a). RCW 7.105.500(9) authorizes a court to award a protected party attorney fees incurred in response to a restrained party's motion to modify or terminate a DVPO.

J.A.S. is the prevailing party on an appeal challenging a denial of a motion to terminate a DVPO, and therefore, is entitled to attorney fees. Accordingly, we grant J.A.S.'s request for attorney fees on appeal.[11]

## CONCLUSION

The superior court's denial of Schuyler's motion to revise the commissioner's order denying Schuyler's motion to terminate the CVPO was not an abuse of discretion. Therefore, we affirm. We also award J.A.S. attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Veljacic, A.C.J.

---

[11] J.A.S. also argues that "fees should be awarded to [her] because the issues raised in Mr. Schuyler's appeal are without merit." Br. of Resp't at 34. RAP 18.9(a) authorizes this court to "order a party . . . who . . . files a frivolous appeal . . . to pay terms or compensatory damages to any other party who has been harmed" by the appeal. Because we award J.A.S. her attorney fees on appeal as the prevailing party on a challenge to a denial of a motion to terminate a DVPO, we do not address this argument.